FILED
United States Court of Appeals
Tenth Circuit

February 10, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSE ANGEL YANEZ-RODRIGUEZ,

    Defendant-Appellant.

No. 08-2100

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:06-CR-2153-WJ)**

---

Scott M. Davidson, Albuquerque, New Mexico, for Defendant-Appellant.

Gregory J. Fouratt, United States Attorney, (Laura Fashing, Assistant United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **KELLY, HOLLOWAY,** and **BRISCOE**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Defendant Jose Yanez-Rodriguez entered a guilty plea, pursuant to a plea agreement, to one count of reentering the United States after previous deportation, in violation of 8 U.S.C. §§ 1326(a) and (b). Yanez-Rodriguez was ultimately

sentenced to 144 months of imprisonment, followed by 3 years of supervised release. He contends on appeal: (1) the government breached its plea agreement to recommend that a sentence at the lower end of the United States Sentencing Guideline ("Guideline") range is appropriate; (2) the Guideline range was incorrectly calculated; and (3) the district court's upward variance was substantively unreasonable.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I

On September 3, 2006, Yanez-Rodriguez was found in Santa Teresa, New Mexico, by U.S. Border Patrol Agents. Yanez-Rodriguez admitted he was a Mexican citizen and that he was in the United States illegally. A records check revealed Yanez-Rodriguez had been deported from the United States after a conviction of aggravated sexual battery in Kansas, and that he had not received permission to reenter the United States.

Yanez-Rodriguez pleaded guilty to the charged offense on October 25, 2006, pursuant to a plea agreement. The plea agreement contemplated Yanez-Rodriguez's receiving a reduction of up to 3 levels from his total offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, although the parties recognized that the stipulation for acceptance of responsibility was not binding on the district court. Yanez-Rodriguez reserved his right to appeal his sentence if it was outside the applicable Guideline range, or if the sentence was not imposed in

2

conformity with his plea agreement. The government also agreed "to recommend that a sentence at the lower end of the Sentencing Guideline range is appropriate." ROA Vol. 1 Doc. 14 at ¶ 12.

Subsequent to Yanez-Rodriguez's guilty plea, the probation office prepared a presentence report. The presentence report determined that Yanez-Rodriguez's base offense level was 8, pursuant to U.S.S.G. § 2L1.2(a). The presentence report also applied a 16-level increase, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), because Yanez-Rodriguez was convicted of felony aggravated sexual battery before he was deported from the United States. The presentence report then applied a 3-level reduction in offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, which gave Yanez-Rodriguez a total offense level of 21.

The presentence report also detailed Yanez-Rodriguez's prior criminal history, which included prior convictions dating to 1978.[1] The convictions included: two convictions for misdemeanor theft, misdemeanor attempted burglary of a vehicle, two convictions for misdemeanor illegal entry, escape of a federal prisoner, illegal reentry after previous deportation, misdemeanor narcotics offense, misdemeanor unlawful deprivation of property, misdemeanor criminal

---

[1] In addition to his convictions, Yanez-Rodriguez was arrested six times between 1982 and 1987. Of these, he was arrested three times for deportation proceedings, once for retail theft, once for battery and assault, and once for resisting or obstructing a peace officer.

3

trespass, misdemeanor destruction of property, misdemeanor simple assault, aggravated sexual battery, misdemeanor battery, and second degree burglary.

Regarding Yanez-Rodriguez's aggravated sexual battery conviction, the presentence report stated:

> [O]n March 23, 1988, the defendant was with a group of men who chased and caught a 14-year-old girl while she was walking through a park. The young female victim reported she was held down by several men while the defendant forcibly had sex with her. When a witness came upon the scene the victim began yelling for help. At that time the defendant and the attackers fled. The defendant was arrested in the park a short time after the incident. It should be noted that the defendant was originally charged with Rape; however, at the time of the plea, the charge was amended to Aggravated Sexual Battery, a class D felony in the State of Kansas, which is punishable by up to 10 years imprisonment. Further, according to the victim's impact questionnaire, she reported that after the rape, she was informed by her doctor that she had a venereal disease. The victim also reported that the rape caused her to attend weekly counseling sessions. There was no information to indicate how long the victim attended counseling.

ROA Vol. 2 at ¶ 31. The presentence report also stated that Yanez-Rodriguez was sentenced to 3 to 10 years' imprisonment for the offense, served 2 years, and was then released and deported to Mexico in 1990.

The presentence report applied 3 criminal history points, all of which were imposed for Yanez-Rodriguez's most recent conviction of second degree burglary from 1991. After that conviction, Yanez-Rodriguez was sentenced to 15 years in prison, and served 10 years before being released and deported to Mexico in September 2000. Yanez-Rodriguez's other prior convictions were not counted for purposes of his criminal history points, because the sentences for those prior

4

convictions were imposed more than 15 years before he committed the offense in this case, and his incarceration for the earlier convictions did not extend into the 15-year period. See U.S.S.G. § 4A1.2(e) (defining the applicable time period for the computation of criminal history points for prior sentences). Yanez-Rodriguez's 3 criminal history points established a criminal history category of II. Based on a total offense level of 21, and a criminal history category of II, the advisory sentencing range used by the district court was 41 to 51 months' imprisonment.

Yanez-Rodriguez's sentencing proceedings in the present case were lengthy and involved. After receiving the presentence report, Yanez-Rodriguez filed a sentencing memorandum, wherein he requested a downward departure based on his "mental and emotional conditions, lack of guidance as a youth, and diminished capacity." Id. Vol. 1, Doc. 19 at 4. In that memorandum, Yanez-Rodriguez also sought a downward variance based on the factors set forth in 18 U.S.C. § 3553(a), and requested a sentence of 24 months. In support of his request for a lower sentence, Yanez-Rodriguez described his troubled childhood, being sexually molested as a child, his decision to leave his home and live on the streets at age 12, and his abuse of alcohol, drugs, and inhalants. Yanez-Rodriguez did not object to the calculation of the advisory Guideline sentencing range, nor did he object to any factual statement in the presentence report.

At the first sentencing hearing, Yanez-Rodriguez argued in support of his

motion for a downward departure and downward variance. The district court

invited the government to respond to Yanez-Rodriguez's request for a below

advisory Guideline sentence, and the government stated:

> [T]his defendant's criminal history is awful, and in fact, he has 12 convictions for which he received no criminal history points, including what appears to be the brutal rape of a 14-year-old girl; that, while the defendant may have some diminished mental capacity or some sexual issues, he clearly is a menace to society, and the government is not seeking in any way an upward departure in terms of criminal history category. In fact, we're precluded from doing that by the Plea Agreement, but I would suggest a downward departure is probably not appropriate in this case.
> . . .
> So I would suggest I don't have any objection to him going to the medical prison, but I would suggest that a sentence at the low end of the guideline range would be appropriate given the defendant's extensive criminal history. . . .

Id. Vol. 3 at 15. The district court then denied Yanez-Rodriguez's request for a

downward departure and downward variance and informed the parties that it was

contemplating a sentence above the advisory Guideline range.[2] Yanez-Rodriguez

requested the district court order a full psychological examination, to which the

prosecutor and district court agreed. The district court ordered a full

psychological examination, including an examination of Yanez-Rodriguez's

competency and whether he suffered from any mental disease or defect.

---

[2] The district court denied the request for a downward departure, and then, after considering the § 3553(a) factors, determined that, if anything, those factors warranted a departure or variance above the advisory Guideline range, based on Yanez-Rodriguez's "extensive, serious, and sometimes violent criminal history." Id. Vol. 3 at 24.

6

After completion of the psychological examination, Yanez-Rodriguez

renewed his motion for a downward departure and/or variance based on the

psychologist's findings. The government then filed a sentencing memorandum in

which it reiterated its opposition to Yanez-Rodriguez's request for a sentence

below the advisory Guideline range. At the conclusion of that sentencing

memorandum, the government stated:

> [T]he United States respectfully requests that this Court conclude that a sentence within the advisory guideline range of 41 to 51 months would be reasonable. The United States opposes Yanez[-Rodriguez]'s request for a deviation from the advisory sentencing guideline range. The United States takes no position on the Court's proposal to impose a sentence above the advisory sentencing guideline range.

Id. Vol. 1, Doc. 29 at 6.

At the second sentencing hearing, the psychologist failed to appear as

scheduled. The following exchange was had between the district court and the

government's counsel ("AUSA"):

> THE COURT: . . . I indicated a concern that perhaps the sentence should be above the guidelines, but I think I need to be specific and to put[] the defendant on notice of what I'm contemplating, although again, after listening to [the psychologist], I may––I may not be inclined to do anything.
>     Now, Mr. [AUSA], the government's position is that the guideline sentence is a reasonable sentence; is that right?
>
> [AUSA]: Yes, Your Honor, and in fact, [defense counsel] reminded me today that we do have a Plea Agreement in this case, and I am bound by that agreement.
>
> THE COURT: Sure.

7

[AUSA]: And in fact, I'm bound to not only––to not only recommend a guideline sentence but to recommend the low end of the guidelines, and that's part of our agreement.

THE COURT: Which would be Offense Level 21, Category II; is that right?

[AUSA]: Yes, that's correct, Your Honor.

THE COURT: Okay. All right. I just wanted to, you know—

[AUSA]: We do oppose [Yanez-Rodriguez]'s request for a downward departure and—

THE COURT: Or a variance—

[AUSA]: Yes.

THE COURT: —below the low end of the guidelines.

[AUSA]: Exactly. Yes, Your Honor.

Id. Vol. 4 at 6-7.

The district court denied Yanez-Rodriguez's request to resolve the case that day without hearing from the psychologist. The district court stated:

I'm a little torn as far as how to go on this, and so I recognize that, even if the guide––if there's a sentence within the guidelines and it's on the high end of the guidelines, the appellate waiver would still apply. I'm not bound by the government's [recommendation] to a sentence on the low end of the applicable guideline range, and so I'm considering a whole host of things, but I did want to hear from [the psychologist].

Id. at 11.

After the second sentencing hearing, the district court gave written notice to Yanez-Rodriguez that it was contemplating a sentence above the advisory

8

Guideline sentencing range. The notice stated that the district court was contemplating an upward departure on the ground that Yanez-Rodriguez's criminal history category under-represented his criminal history. The notice also stated that it was considering an upward variance because "a lengthy sentence may be necessary in order to protect the public from further crimes of this Defendant and to comply with the other purposes of paragraph (2) of 18 U.S.C. § 3553(a)." Id. Vol. 1, Doc. 31 at 3. Yanez-Rodriguez subsequently filed objections to some of the factual statements in the presentence report relating to some of his convictions and arrests, but he did not object to the factual statements related to his conviction for aggravated sexual battery or second degree burglary.

At the third sentencing hearing, the psychologist was present to testify. On direct examination, the psychologist testified that Yanez-Rodriguez was competent, but that he suffered from severe psychological problems. Id. Vol. V at 24-25, 29-30. The government cross-examined the psychologist, and Yanez-Rodriguez contends several of the government's questions were asked "in an effort to influence the district court to impose a sentence in excess of the Sentencing Guideline range." Aplt. Br. at 4. Yanez-Rodriguez points out that the government asked the psychologist whether he found that Yanez-Rodriguez "will repeatedly violate societal norms as a result of the fact that he mis-perceives events and doesn't anticipate the consequences," to which the psychologist answered: "That's correct." ROA Vol. 5 at 31. The government also asked the

9

psychologist whether Yanez-Rodriguez exhibited "antisocial behavior," to which the psychologist answered "That's correct, sir." Id.

The government then questioned the psychologist about a Kansas Department of Corrections report, which the government contended was completed while Yanez-Rodriguez was in custody "on the charge of having raped a very––a young girl." Id. at 35. The government took the psychologist through the findings from the report, which detailed Yanez-Rodriguez's behavioral problems, avoidance of responsibility, improper emotional reactions, trouble with interpersonal relationships and the law, religious difficulties, and inability to form appropriate societal relationships. Id. at 35-39. The government concluded its cross-examination with: "And it's someone like that . . . who can't separate reality from fantasy, who doesn't anticipate consequences, who will repeatedly violate societal norms, who acts on impulse with less information than is necessary to make an appropriate decision, and who is suffering a serious disruption of their sexual identity, could that person pose a danger to other people?" The psychologist answered, "Yes." Id. at 39.

After the psychologist's testimony, the district court asked the government: "[D]oes the government wish to state anything further regarding what is a reasonable sentence as to this defendant?" The government responded:

> Yes, Your Honor. I just want to be very clear about that. The government opposes [defense counsel's] request for a downward departure or for a deviation pursuant to *Booker*. Beyond that, the

10

government, the government's position, consistent with the Plea Agreement, is that the government recommends a sentence at the low end of the advisory guideline range as calculated by the Probation Office, and I am bound by that agreement, so that is my recommendation. I did cross-examine [the psychologist]. I do not believe the defendant is entitled to any type of a deviation, but beyond that, my position is that he should receive a sentence at the low end of the range.

Id. at 47. Defense counsel and the district court then discussed that neither the probation office nor the government recommended anything other than a low-end Guideline sentence. Id. at 54.

At the fourth and final sentencing hearing on April 8, 2008, the district court denied Yanez-Rodriguez's renewed request for a downward departure and/or variance. The district court found that a Guideline sentence would be unreasonable and an upward variance was appropriate. Yanez-Rodriguez's defense counsel then spoke, reminding the district court of the government's plea agreement and arguing for a within-Guideline sentence. The government was then invited by the district court to speak:

> [AUSA]: Your Honor, as the Court's aware, there is a Plea Agreement in this case, and the government must recommend the low end of the guidelines it is pursuing.
>
> THE COURT: Sure.
>
> [AUSA]: I would like to say, however––and this is not an argument in any way as to what the sentence should be imposed. I have the utmost admiration for the Court in this case; I mean, the tremendous amount of work that the Court has put into this case. And I know that this Court has a very busy criminal docket, but I am––my admiration for the Court's willingness to work so hard to try and achieve what it feels is

11

a just sentence is tremendous.

And I will tell you that this case has prompted us to change some of the policies in our office with regard to the issuance of a non-fast-track plea agreement. This case alone has prompted that change, and so I also want to express admiration for [defense counsel]. I know he's had a tiger by the tail, and I know that he's doing everything that he can, and I have the utmost respect for him as well.

THE COURT: No, I——and I would like to say, Mr. [defense counsel], I've been very impressed with the quality of advocacy for Mr. Yanez-Rodriguez. And also, Mr. [AUSA], and I understand, you know, it's a high-volume court, and you know, oftentimes——I mean no criticism towards the government that, you know, in terms of whether it's fast track or a plea agreement on these illegal reentry cases. They come at you fast and furious, and but this is one that it's not a——a typical for, I think, for obviously, this record indicates that.

[AUSA]: I understand, Your Honor, and again, based on this case alone, we have revised the policy.

Id. Vol. 5 at 30-31. The court then imposed a sentence of 144 months' imprisonment, followed by 3 years of supervised release.

II

A. *Breach of the Plea Agreement*

Yanez-Rodriguez did not object in the district court to any alleged breach of the plea agreement by the government. However, "[t]his circuit has held that a defendant does not waive his right to appeal a claim that the government has breached a plea agreement when he fails to object to the breach before the district court." United States v. Peterson, 225 F.3d 1167, 1170 (10th Cir. 2000). In addition, even though Yanez-Rodriguez's plea agreement contained a waiver of the right to appeal his sentence, "an appellate waiver is not enforceable if the

12

Government breaches its obligations under the plea agreement." United States v. Rodriguez-Rivera, 518 F.3d 1208, 1212 (10th Cir. 2008).

We review de novo whether the government has breached a plea agreement.[3] United States v. VanDam, 493 F.3d 1194, 1199 (10th Cir. 2007). In interpreting a plea agreement, we rely on general principles of contract law, United States v. Cachucha, 484 F.3d 1266, 1270 (10th Cir. 2007), and therefore "look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea," VanDam, 493 F.3d at 1199. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262

---

[3] The Supreme Court granted certiorari to resolve a circuit split as to whether an un-objected-to, alleged breach of a plea agreement is entitled to de novo review or limited to plain error review. See Puckett v. United States, 129 S. Ct. 29, 2008 WL 647140, at *1 (Oct. 1, 2008) (granting writ of certiorari to determine: "Whether a forfeited claim that the government breached a plea agreement is subject to the plain-error standard of Rule 52(b) of the Federal Rules of Criminal Procedure.").

However, our precedent requires de novo review. See VanDam, 493 F.3d at 1199 ("This Court reviews de novo the question of whether the government has breached a plea agreement, *even when the defendant fails to preserve this objection below*." (emphasis added) (citing United States v. Werner, 317 F.3d 1168, 1169 (10th Cir. 2003))). We need not delay our ruling in this case to await the Supreme Court's ruling in Puckett because regardless of which standard the Supreme Court chooses, we are applying here the standard that is more beneficial to the defendant.

13

(1971). "That the breach of agreement was inadvertent does not lessen its impact." Id. We construe any ambiguities in the plea agreement against the government as the drafter of the agreement. Cachucha, 484 F.3d at 1270.

The specific language from the plea agreement that Yanez-Rodriguez claims was breached was the government's promise "to recommend that a sentence at the lower end of the Sentencing Guideline range is appropriate." ROA Vol. 1 Doc. 14 at ¶ 12.

### 1. Government's Statement to District Court in its Sentencing Memorandum

Yanez-Rodriguez contends the government first breached the plea agreement when it stated in its sentencing memorandum that it "took no position" on the district court's proposal to vary upward from a Guideline sentence. Yanez-Rodriguez argues that the plea agreement prohibited the government from "remaining neutral" to a sentence above the Guideline range. Aplt. Br. at 26.

At the first sentencing hearing, Yanez-Rodriguez requested a psychological examination, in support for his request for a downward departure and/or variance. After completion of the psychological examination, Yanez-Rodriguez renewed his motion for a downward departure and/or variance based on the psychologist's findings. The government then filed a sentencing memorandum in which it reiterated its opposition to Yanez-Rodriguez's request for a sentence below the advisory Guideline range. At the conclusion of that sentencing memorandum, the

14

government stated:

> [T]he United States respectfully requests that this Court conclude that a sentence within the advisory guideline range of 41 to 51 months would be reasonable. The United States opposes Yanez[-Rodriguez]'s request for a deviation from the advisory sentencing guideline range. The United States takes no position on the Court's proposal to impose a sentence above the advisory sentencing guideline range.

ROA Vol. 1, Doc. 29 at 6. At the second sentencing hearing, the government reminded the district court of its plea agreement promise, and recommended a sentence at the low end of the Guideline range. Id. Vol. 4 at 7.

Although the sentencing memorandum mis-stated the government's promise from the plea agreement by requesting the district court to sentence Yanez-Rodriguez within the 41 to 51 month range rather than at the lower end of that range, the government forcefully and adequately informed the district court, at the next opportunity, and repeatedly thereafter, that it was recommending a sentence at the lower end of the advisory Guideline range. At the second sentencing hearing, which was one week after the government submitted its sentencing memorandum, the government stated that it was "bound to not only––to not only recommend a guideline sentence but to recommend the low end of the guidelines . . . ." Id. The government repeated its plea agreement position at the third sentencing hearing and at the final sentencing hearing. Id. Vol. 5 at 47. In addition, the government's mis-statement in its sentencing memorandum of requesting a within-Guidelines sentence rather than a low-end Guidelines

sentence came <u>after</u> the government informed the district court of its recommendation for a low-end Guideline sentence at the first sentencing hearing. <u>Id.</u> Vol. 3 at 15.

As a result, the government did not breach the plea agreement. It is clear from the totality of the events surrounding the sentencing memorandum that the government's position was a low-end advisory Guideline sentence for Yanez-Rodriguez. The record shows that the district court repeatedly received the government's recommendation for a low-end Guidelines sentence, which was what the plea agreement required.

**2. Government's Cross-Examination of the Psychologist**

Yanez-Rodriguez alleges the government next breached the plea agreement when it cross-examined Yanez-Rodriguez's psychologist at the third sentencing hearing. Aplt. Br. at 20. Yanez-Rodriguez requested the psychologist's examination and testimony in support of his motion for a downward departure and/or variance. After conclusion of direct examination of the psychologist, the government cross-examined the psychologist about the basis of his opinion, and whether his opinion was consistent with a prior psychological evaluation of Yanez-Rodriguez.

It is true that the government aggressively defended against Yanez-Rodriguez's motion for a downward departure and/or variance. For example, in its cross-examination of the psychologist, the government highlighted the fact that

16

Yanez-Rodriguez was a danger to other people, and would repeatedly violate societal norms. ROA Vol. 5 at 31. The government highlighted the fact that Yanez-Rodriguez had been charged with raping a young girl, and showed no remorse when convicted of this crime. Id. at 35-36.

However, nothing in the express language of the plea agreement prohibits the government from defending against a below-Guidelines sentence. The plea agreement required the government to recommend a sentence at the lower end of the applicable Guidelines sentencing range. The plea agreement contained no language prohibiting the government from defending against a downward departure and/or variance. The plea agreement did not address this circumstance; and the government's defense against a downward departure and/or variance is not against the spirit of the agreement.

In cross-examining the psychologist, the government did not imply or state that it was recommending anything other than a sentence at the lower end of the Guideline range. The government, after cross-examination, stated:

> The government opposes [defense counsel's] request for a downward departure or for a deviation pursuant to *Booker*. Beyond that, the government, the government's position, consistent with the Plea Agreement, is that the government recommends a sentence at the low end of the advisory guideline range as calculated by the Probation Office, and I am bound by that agreement, so that is my recommendation. I did cross-examine [the psychologist]. I do not believe the defendant is entitled to any type of a deviation, but beyond that, my position is that he should receive a sentence at the low end of the range.

17

Id. at 47.  The government was clear that the purpose of its cross-examination was to defend against the district court applying a downward departure and/or variance to Yanez-Rodriguez's sentence.  We have stated that "[a] plea agreement may be breached when the government's attorney is not only an unpersuasive advocate for the plea agreement, but, in effect, argues against it."  Cachucha, 484 F.3d at 1270 (internal quotation and alteration omitted).[4]  Through its questioning, the government did not argue against the plea agreement, but argued only against a downward departure and/or variance.  Although it is true that the "government owes the defendant a duty to pay more than lip service to a plea agreement," id. (internal quotation omitted), there are no ambiguities in the plea agreement at issue here, and the government complied with the express terms of the plea agreement.

Moreover, it is unreasonable for Yanez-Rodriguez to think the government, based on the plea agreement's promise to recommend a sentence at the lower end of the applicable Guidelines sentencing range, would not defend against a downward departure and/or variance.  There is nothing in the plea agreement that

---

[4]  This case is factually distinguishable from Cachucha.  In Cachucha, the government agreed to recommend a sentence within the advisory guideline range. 484 F.3d at 1270.  The government, at sentencing, then argued that a guidelines-based sentence was "way too low," and "incredibly low."  Id.  The government also stated that there were "problems" with a Guidelines sentence, and that the Guidelines sentence "did not make sense."  Id.  We found a breach of the plea agreement based on this conduct.  Id. at 1271.  The government's arguments here were not arguments against the sentence it had agreed to recommend.

18

would reasonably lead Yanez-Rodriguez to believe the government would stand mute if he argued for a downward departure or variance. See United States v. Scott, 469 F.3d 1335, 1338 (10th Cir. 2006) ("It is well settled that we must interpret the agreement according to the defendant's reasonable understanding of its terms.").

**3. Government's Reference to Policy Changes and Praise to District Court for its Effort to Achieve a Just Sentence**

Yanez-Rodriguez next argues the government breached the plea agreement through its statements at the fourth and final sentencing hearing. Aplt. Br. at 28-33. At that hearing, the district court denied Yanez-Rodriguez's request for a downward departure and downward variance. The district court then found that a Guideline sentence would be unreasonable and an upward variance was appropriate. It should be emphasized that at this point, the district court had already ruled that it would not impose a Guideline sentence, and would impose an upward variance.

Yanez-Rodriguez's defense counsel then spoke, reminding the district court of the government's plea agreement and arguing for a within-Guideline sentence. The government was then invited by the district court to speak, and at that point, the government told the district court that policy within the U.S. Attorney's Office had been changed as a result of this case, and praised the district court for its effort to impose a "just" sentence. ROA Vol. 5 at 30-31. The court then

19

imposed its sentence.

Yanez-Rodriguez relies on a First Circuit case, United States v. Gonczy, 357 F.3d 50 (1st Cir. 2004), in support of his argument that the government's comments praising the district court "undercut" the government's promise in the plea agreement to recommend a sentence at the low end of the sentencing guideline range. In Gonczy, the First Circuit found a violation of a plea agreement when the government recommended a sentence in accordance with its agreement, and then made a lengthy substantive argument against the defendant's character. Id. at 53-54.

Our present case is distinguishable from Gonczy. In the present case, the government repeatedly, over the course of four sentencing hearings, stated its recommendation of a low-end advisory Guideline sentence. The government's statements at the sentencing hearing merely praised the district court for the time it took to address Yanez-Rodriguez's sentence, and advised the district court of a change in policy—although the government's reference to a policy change was vague. The government made no substantive arguments against Yanez-Rodriguez in its closing statements to the district court, as the government did in Gonczy. The government repeatedly stated its recommendation of a low-end Guideline sentence. Its statement at the final sentencing hearing was nothing more than complimenting the district court and defense counsel for their hard work on Yanez-Rodriguez's case, and an implied assurance that the district court would

20

not have to expend that amount of time in the future.

## B. *Plain Error in Calculating Sentencing Guideline Range*

Yanez-Rodriguez next contends that the district court procedurally erred when it calculated his Guideline sentencing range. Generally, "[a] defendant who waives appellate rights in a plea agreement may not appeal his sentence." United States v. Rodriguez-Rivera, 518 F.3d 1208, 1214 (10th Cir. 2008). However, an appeal that falls outside the scope of the waiver is reviewable. Id. Yanez-Rodriguez did not waive his right to appeal a sentence outside of the Guideline range and therefore we may review his appeal of the proper calculation of the Guideline sentencing range.

Yanez-Rodriguez, however, did not object to the calculation of his Guideline sentencing range in the district court. "Ordinarily, when a claim of error was not raised below, we review only for plain error." United States v. Lopez-Flores, 444 F.3d 1218, 1221 (10th Cir. 2006). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."[5] Id. at 1222 (internal quotation omitted).

---

[5] Yanez-Rodriguez cites a Fifth Circuit case, United States v. Meraz-Enriquez, 442 F.3d 331 (5th Cir. 2006), for the proposition that the alleged error in calculating Yanez-Rodriguez's Guidelines sentence was automatically plain error. See Meraz-Enriquez, 442 F.3d at 332 ("The erroneous imposition of a sixteen-level enhancement would affect the defendant's substantial rights and the

(continued...)

21

Yanez-Rodriguez argues that the district court erred when it calculated his total offense level of 21. The total offense level was partially based on a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) for previous deportation after a felony conviction for a crime of violence––a forcible sex offense. We review de novo a district court's determination that a prior offense qualifies as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). United States v. Romero-Hernandez, 505 F.3d 1082, 1085 (10th Cir. 2007).

Under U.S.S.G. § 2L1.2(b)(1)(A)(ii), a sentencing court must increase a defendant's offense level by 16 levels "[i]f the defendant previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence." The Guidelines define "crime of violence" as "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor . . . or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. 1(B)(iii).[6]

---

[5](...continued)
integrity of judicial proceedings, and the only question here is whether this imposition was in error."). Because we conclude that the district court did not err when it calculated Yanez-Rodriguez's Guidelines sentence range, we need not address the determination whether the alleged error was plain error.

[6] "'In interpreting a guideline, we look at the language in the guideline itself, as well as the interpretative and explanatory commentary to the guideline provided by the Sentencing Commission.'" Romero-Hernandez, 505 F.3d at 1085 (quoting United States v. Torres-Ruiz, 387 F.3d 1179, 1181 (10th Cir. 2004)).

22

When a defendant contests whether a prior conviction is a crime of violence, the sentencing court is generally required to follow the "categorical approach" as adopted in Taylor v. United States, 495 U.S. 575, 600 (1990). See also United States v. Perez-Vargas, 414 F.3d 1282, 1284 (10th Cir. 2005). The categorical approach requires the sentencing court to look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Taylor, 495 U.S. at 600 (internal quotation omitted). But when an examination of the statute reveals that the statute "reaches a broad range of conduct, some of which merits an enhancement and some of which does not, courts resolve the resulting ambiguity by consulting reliable judicial records." United States v. Martinez-Hernandez, 422 F.3d 1084, 1086 (10th Cir. 2005). At this stage, the analysis is referred to as the "modified categorical approach." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 127 S. Ct. 815, 819 (2007); Batrez Gradiz v. Gonzales, 490 F.3d 1206, 1211 (10th Cir. 2007).

Following the categorical approach here, we look first to the language of the statute to determine whether Yanez-Rodriguez was convicted of a crime of violence. Because we conclude that the particular section of the Kansas statute at issue prohibits conduct that is categorically a crime of violence under § 2L1.2, our analysis ends with the language of the statute and we do not proceed to apply the modified categorical approach.

Yanez-Rodriguez was convicted under the 1988 version of Kansas statute §

23

21-3518, which defined aggravated sexual battery as: "sexual battery, as defined in K.S.A. 1983 Supp. 21-3517 and amendments thereto, against a person under 16 years of age." Section 21-3517 defined sexual battery as "the unlawful, intentional touching of the person of another who is not the spouse of the offender and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another." Kan. Stat. Ann. § 21-3517 (1988).

Yanez-Rodriguez argues that the 16-level enhancement was not applicable, based on two Fifth Circuit cases, which he contends found that later versions of Kan. Stat. Ann. § 21-3518 are <u>not</u> a crime of violence for purposes of the 16-level enhancement: <u>United States v. Meraz-Enriquez</u>, 442 F.3d 331 (5th Cir. 2006) and <u>United States v. Matute-Galdamez</u>, 111 F. App'x 264 (5th Cir. 2004) (unpublished). These cases both hold that a sexual offense must require the use of physical force to qualify as a forcible sex offense. <u>Meraz-Enriquez</u>, 442 F.3d at 333; <u>Matute-Galdamez</u>, 111 F. App'x at 265-66. We have rejected this approach, however.

In <u>Romero-Hernandez</u>, we evaluated a Colorado statute, Colo. Rev. Stat. § 18-3-404(a), which we characterized as prohibiting "nonconsensual sexual contact that is not necessarily achieved by physical force." 505 F.3d at 1087. We stated that the Colorado statute did "not require the use of physical force against the victim apart from the force inherent in the unlawful contact itself." <u>Id.</u> at 1087 n.3. We determined that the statute, which did not require physical compulsion,

24

qualified as a forcible sex offense based on the common meanings of the words "sex offense" and "forcible," and the Guideline comment, which did not define the term "forcible sex offense" using the modifier "physical." See id. at 1089 ("Thus, a sex offense may be committed by means that do not involve 'physical' force, yet the offense may still be 'forcible.'").

We determined that "a 'forcible' sex offense need not be accomplished by means of physical compulsion," and then analyzed "whether nonconsensual sexual contact, such as that prohibited by the Colorado statute, is necessarily 'forcible'." Id. We concluded that "[w]hen an offense involves sexual contact with another person, it is necessarily forcible when that person does not consent." Id. As a result, we held that the statute was "categorically a crime of violence." Id.

Like the Colorado statute at issue in Romero-Hernandez, the statute here precludes nonconsensual sexual contact that is not necessarily achieved by physical force. See Kan. Stat. Ann. § 21-3517 (1988) (defining sexual battery as "the unlawful, intentional touching of the person of another who is not the spouse of the offender and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another"). And, based on the precedent established in Romero-Hernandez, a conviction under a statute is a "forcible sex offense" when the statute prohibits nonconsensual sexual contact with another person. As a result, similar to our holding in Romero-Hernandez,

25

we conclude that Yanez-Rodriguez was convicted of a crime of violence, based on his conviction for a forcible sex offense, because Kan. Stat. Ann. § 21-3517 is categorically a crime of violence. The district court did not err in applying the 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii).

## C. *Upward Variance/Substantive Reasonableness*

Finally, Yanez-Rodriguez contends the district court erred by varying upward from the Guideline sentencing range. Aplt. Br. at 48. We review the district court's variance from the advisory Guideline range through application of the 18 U.S.C. § 3553(a)[7] factors for substantive reasonableness, utilizing the

---

[7] Section 3553(a)(2) states:

> (a) Factors to be considered in imposing a sentence . . . . The court, in determining the particular sentence to be imposed, shall consider––
> . . .
> (2) the need for the sentence imposed––
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > © to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective

(continued...)

abuse-of-discretion standard. United States v. Todd, 515 F.3d 1128, 1135 (10th Cir. 2008). A district court abuses its discretion when it renders a judgment that is "arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Byrne, 171 F.3d 1231, 1235-36 (10th Cir. 1999) (quotations omitted). We must consider the totality of the circumstances, including the extent of deviation from the sentencing Guideline, but we may not apply a presumption of unreasonableness. Gall v. United States, 128 S. Ct. 586, 597 (2007). This court:

> may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

Id. We must "afford substantial deference to district courts" in abuse of discretion review. United States v. Smart, 518 F.3d 800, 806 (10th Cir. 2008).

District courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range. See United States v. Jarvi, 537 F.3d 1256, 1263 (10th Cir. 2008) ("[D]istrict courts have broad discretion to consider individual characteristics like age, employment, and criminal history in fashioning an appropriate sentence under 18 U.S.C. § 3553(a), even when disfavored under the Guidelines or already accounted for in another

---

[7](...continued)
        manner[.]

27

part of the calculation." (internal citations omitted)). With these principles in mind, we turn to Yanez-Rodriguez's sentence.

At the final sentencing hearing, the district court varied upward from the advisory Guideline range of 41 to 51 months, imposing a sentence of 144 months' imprisonment. The district court discussed the § 3553(a) sentencing factors at length:

> And I will now proceed to go to the sentencing factors. First, the nature and circumstances of the offense, the illegal reentry offense to which the defendant pled guilty is punishable for a period of up to 20 years in prison, and it has one of the harshest enhancement schemes in the sentencing guidelines, and I'll refer to 8 U.S.C., Section 1326(a) and (b), and then also, U.S. Sentencing Guideline Section 2L1.2. The potential penalties associated with the illegal reentry offense that this defendant has committed, in my view, signal clear congressional intent that this is a serious crime and not merely a regulatory offense or anything in the nature of a simple illegal reentry.
>
> Now, in terms of the history and characteristics of this defendant . . .

ROA Vol. 6 at 12-13. The district court then went through each paragraph of the criminal history section in the presentence report, noting each of Yanez-Rodriguez's prior offenses, the characteristics of each, and whether Yanez-Rodriguez received criminal history points for the offense. Id. at 13-17.

The district court continued:

> This defendant's criminal history indicates either arrests or convictions in four states: Chicago, [Illinois], Kansas, Texas, and New Mexico; and as I alluded to earlier, he would clearly be in Criminal History Category VI but for the fact that most of the decade of the 1990s were spent in the Texas Department of Corrections. Therefore,

28

much of the convictions for––that he would have otherwise received criminal history points on were beyond the time period for which they can be counted.

This criminal history clearly, in my view, indicates the defendant is a violent and brutal criminal, and I'll note that, while he has a tragic background, nevertheless, he had––it's resulted in such that he is a brutal and violent criminal who preys on other individuals.

Now, the sentence, there's a need for the sentence imposed to, A, reflect the seriousness of the offense. I've already indicated that Congress has determined that this type of offense, the maximum term of imprisonment is up to 20 years, and the 16-level enhancement under the guidelines for this defendant's illegal reentry is one of the most significant guideline enhancements. So obviously, in the eyes of the Congress and the United States Sentencing Commission, this is a serious offense.

The sentence imposed also must promote respect for the law. It is quite clear to me from this defendant's lengthy criminal history and his numerous, numerous deportations, that this defendant has absolutely no respect for the laws of the United States or, for that matter, the laws of the State of Illinois, Kansas, Texas. Although there's no indication he has criminal history out of New Mexico state court, I would surmise he has no respect for any law.

There's also the need for the sentence to be imposed to provide just punishment for the offense. Again, given this defendant's lengthy criminal history, the seriousness of the offense, the total lack of respect for the law, and the need to provide punishment for the offense, all of those factors warrant a sentence above the guidelines.

The next factor is to afford adequate deterrence to criminal conduct. All the sentences that have been imposed by prior courts as to this defendant have not resulted in any deterrence to him, but a sentence above the guidelines, in my view, will satisfy this factor of affording adequate deterrence to criminal conduct.

The next factor is to protect the public from further crimes of this defendant, and that is, in my view, a critically paramount factor, because this defendant's criminal history strongly indicates the

29

likelihood, the strong likelihood of recidivism and the likelihood that there will be further law violations and further innocent people will be victimized by the defendant.

There's also the factor to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. I'm not sure if that really applies except for the fact that I do intend to recommend that the defendant be mentally and psychologically evaluated by the Bureau of Prisons for the most appropriate setting considering the psychological and mental issues that the defendant has that were identified by [the psychologist who previously evaluated Yanez-Rodriguez and testified at the third sentencing hearing].

There is a factor that the sentence should avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct. I will note that, you know, the guidelines generally––a guideline sentence generally satisfies that factor, so I suppose that, by imposing a sentence above the guidelines, there's certainly the argument that––that there is a sentencing disparity; that is, a greater sentencing disparity as to this defendant, but again, no single factor is dispositive, and I think the other factors support a sentence above the guidelines.

Id. at 17-19. The district court then quoted at length portions of the psychologist's testimony which the district court felt supported a sentence above the Guideline range. Id. at 20-25. The district court highlighted the psychologist's opinion that Yanez-Rodriguez was not likely to be law-abiding in the future and Yanez-Rodriguez's negative impact on the 14-year-old victim of the sexual battery conviction. Id.

Yanez-Rodriguez concedes that the district court explained why it wanted to vary upward from the Guidelines, but argues that the district court's explanation of the § 3553(a) factors failed to adequately explain the basis for the

30

extent of the upward variance. (With a sentence of 144 months' imprisonment, the sentence was 93 months above the high end of the guidelines range.) Yanez-Rodriguez contends that the district court's alleged failure means the sentence imposed was "devoid of rational support and is an abuse of discretion." Aplt. Br. at 49-50.

In support of his argument, Yanez-Rodriguez cites United States v. Walker, 284 F.3d 1169 (10th Cir. 2002). In Walker, the district court *departed* upward in calculating the defendant's Guideline sentence. Id. at 1171. We found error because the district court did not justify its 7-level upward departure. Here, the district court *varied* upward, and adequately explained both the basis for varying and the need for the extensive variance. Although it is true that the district court did not specifically address each § 3553(a) factor in terms of why each factor justified the extent of the variance, it is clear from reading the district court's lengthy explanation that it fully and adequately explained why it varied as it did. In addition, Walker was decided pre-Gall. In Gall, the Supreme Court noted that it is "uncontroversial that a major [variance] should be supported by a more significant justification than a minor one." 128 S. Ct. at 597. We have stated, however, that our purpose post-Gall is merely to determine whether "the district court's proffered rationale, on aggregate, justifies the magnitude of the sentence." United States v. Pinson, 542 F.3d 822, 837 (10th Cir. 2008).

Yanez-Rodriguez also cites United States v. Rivera, 192 F.3d 81 (2d Cir.

31

1999), in support of the argument that the district court erred by using Yanez-Rodriguez's childhood abuse as a variance factor, rather than using it as a basis for downward departure. See id. at 84 (holding that a defendant's mental and emotional condition stemming from abuse suffered during childhood can be taken into account at sentencing when it is "extraordinary"). Yanez-Rodriguez's argument is again foreclosed by precedent from this circuit. In Pinson, we affirmed a sentence of 240 months' imprisonment, which was 135 months above the applicable guideline range, because, in part, the sentence was "the product of the district court's belief that [the defendant] posed a danger to the public."[8] 542 F.3d at 836.

As in this case, the district court's conclusion on this point in Pinson was supported by the expert testimony of a psychologist. Id. at 837. We noted that district courts should hesitate to use an upward variance to increase the incarceration time for defendants who might pose a risk to the public because of their mental health problems, but did not foreclose the use of this factor as an aid at sentencing. Id. at 838-39 ("The Supreme Court has reaffirmed that district

_____

[8] In addition to Pinson, we affirmed a substantial variance in another case when the district court adequately stated its justification and consideration of the § 3553(a) factors. See, e.g., United States v. Scott, 529 F.3d 1290, 1304-05 (10th Cir. 2008) (affirming the district court's upward variance to a 120-month sentence from a Guideline top sentence of 87 months' imprisonment based on the district court's lengthy justification considering the individualized application of each of the § 3553(a) factors).

courts have wide discretion in choosing the factors it considers during sentencing. See Gall, 128 S. Ct. at 601-02. This is even true when, as here, the factor is a discouraged one under the guidelines."). In addition, the district court used a wide range of factors in determining Yanez-Rodriguez's upward variance and ultimate sentence. Yanez-Rodriguez's mental illness was not the sole factor used by the district court to justify its upward variance.

In this case, the district court painstakingly went through each § 3553(a) factor, stating, where applicable, how the factor supported an upward variance. The district court was especially troubled by Yanez-Rodriguez's previous harm to his victim, by Yanez-Rodriguez's repeated violations of state and federal laws, and by the expert opinion of the psychologist that Yanez-Rodriguez was likely to offend again if he was unsupervised. Where, as here, the district court decides to vary from the Guideline sentencing range after a careful, reasoned, and reasonable consideration of the § 3553(a) factors, we cannot say the district court abused its discretion.

Accordingly, while this court could conclude a different sentence was reasonable, we cannot exercise the discretion of the district court and "decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable." Gall, 128 S. Ct. at 602; United States v. Muñoz-Nava, 524 F.3d 1137, 1149 (10th Cir. 2008). Affording the district court due deference on its determination that the § 3553(a) factors, as a whole, justify the variance and the

extent of the variance, we find that the district court's decision was "reasoned and reasonable," not an abuse of discretion.  <u>Gall</u>, 128 S. Ct. at 602; <u>Muñoz-Nava</u>, 524 F.3d at 1149.

III

The judgment of the district court is AFFIRMED.