**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

——————————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JUAN RAMON RODRIGUEZ-
BARBOSA, a/k/a Manuel Olmos
Rodrigues, a/k/a June R. Rodriguez-
Barbosa, a/k/a Fernando Rodriguez-Ponce,
a/k/a J. Guadalupe-Joaquin, a/k/a Oscar
Rodriguez, a/k/a Juan Ramone Rodriguez-
Barbosa,

    Defendant - Appellant.

No. 18-1119
(D.C. No. 1:17-CR-00295-MSK-GPG-1)
(D. Colo.)

——————————————————————

**ORDER AND JUDGMENT***

——————————————————————

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **LUCERO**, Circuit Judges.

——————————————————————

Defendant Juan Ramon Rodriguez-Barbosa pled guilty, pursuant to a plea

agreement, to illegally reentering the United States in violation of 8 U.S.C. § 1326(a)

and (b)(2). He was ultimately sentenced to fifty-five months' imprisonment,

followed by three years of supervised release. He contends on appeal that the

government breached its plea agreement to recommend that the district court impose

---

* This order and judgment is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

a sentence within the United States Sentencing Guideline range of 30-37 months. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

Rodriguez-Barbosa was charged with one count of unlawfully reentering the United States after deportation in violation of 8 U.S.C. § 1326(a), (b)(2).  He pled guilty to the charge on November 21, 2017, pursuant to a plea agreement that provided that the government would recommend "the Court impose a sentence within the Guideline range, as calculated by the Court."  R. Vol. I at 11.  In its presentence report ("PSR"), the probation office determined that Rodriguez-Barbosa had a total offense level of 13 with a criminal history category of V, resulting in a guideline range of 30-37 months.  Ultimately, the probation office recommended the district court impose a sentence of 37 months, on the high end of the guideline range, "due to the nature of the defendant's prior criminal history."  R. Vol. II at 50.

The PSR listed Rodriguez-Barbosa's criminal history as including five prior felony convictions, two of which were illegal reentry convictions.  For his first illegal reentry conviction, in 2002, Rodriguez-Barbosa was sentenced to 41 months in prison.  For the second, in 2011, he was sentenced to 51 months in prison. Importantly, after Rodriguez-Barbosa's 2011 illegal reentry conviction but before his 2017 illegal reentry conviction, the Sentencing Commission amended the guidelines that apply to that crime.  The changes in the guidelines explain why the probation office recommended a sentence in 2017 that was lower than the within-guideline

2

sentences Rodriguez-Barbosa had previously received for committing the same crime. Neither Rodriguez-Barbosa nor the government objected to the PSR.

Rodriguez-Barbosa's sentencing hearing took place on March 19, 2018. The district court first heard from defense counsel on Rodriguez-Barbosa's motion for a downward variance. Defense counsel asked for a downward variance and a sentence of 24 months' imprisonment followed by 3 years of supervised release. Defense counsel argued that, once Rodriguez-Barbosa served his sentence and was deported, it was unlikely that he would return to the United States because many of the motivations for his prior returns to this country no longer existed. For example, defense counsel noted that, since his last illegal entry into the United States, Rodriguez-Barbosa's parents and brother had moved from the United States to Mexico and Rodriguez-Barbosa desired to live closer to them, especially because his mother was recently diagnosed with diabetes.

Before hearing from the government, the district court expressed some skepticism about defense counsel's arguments. Chief Judge Krieger remarked,

> I have some difficulty understanding how his relationship with his parents augers for a downward variance. As I understand the facts, his mother wasn't doing well and needed his support when he left Mexico last time. And now to say that he wants to go back to Mexico to be with her is a little bit incongruous.

R. Vol. III at 55–56. Defense counsel and Rodriguez-Barbosa then explained to the court that Rodriguez-Barbosa's family had only recently relocated to Mexico with the intent to remain there permanently.

Then, the district court heard the government's response. The prosecutor began by stating, "While I respect [defense counsel's] arguments and I admire her zealous advocacy, I find myself unpersuaded by the motion for a non-guideline sentence, and I certainly oppose it." Id. at 57. The prosecutor continued:

> Indeed, I gave some serious thought and consulted with others from my office about asking for a variant sentence, a departure upward, based largely on 18 U.S. Code 3553(a)(1), the nature and circumstance of the offense and the history and characteristics of the defendant.
>
> I am troubled by the defendant's criminal history, five prior felony convictions, two of which are illegal reentry convictions, three of which are state court convictions. And I'm troubled by the fact that he had been given supervised release periods on each of his prior federal felony convictions as a deterrent to dissuade him from returning to the country; and, nevertheless, he returned each time.
>
> And it doesn't make a great deal of intuitive sense to me, Your Honor, that his first sentence in 2001 out of the District of Colorado was 41 months of imprisonment with 2 years of supervised release; his second federal sentence in 2010 was for 51 months of prison and 3 years of supervised release. So -- and I understand that the guidelines have changed. That's why with consultation with others in my office I did not decide -- I decided not to pursue a departure or a variance upward. But the fact that his guideline range now is 30 to 37 months seems, if anything, almost an anti-deterrent, that he is looking at a significantly lower sentence by the guidelines than he received the first two times he was convicted of this exact same crime.
>
> My position is that his history reflects, really, a steady pattern of disregard for the law, of willingness to violate the law, not just the laws relating to immigration and lawful entry into this country, but multiple other state-type violations that appear to be consistent and ongoing. So I am certainly opposed to the motion for 24 months of imprisonment. I am asking the Court to impose a sentence at the top of the guideline range of 37 months of imprisonment.

Id. at 57–59. The prosecutor ended with a request that the district court impose a term of supervised release on top of the sentence of imprisonment.

4

The district court then announced that it was imposing an upward variant sentence of 55 months' imprisonment. The district court explained that it had reviewed the probation office's presentence report and noted that the sentence recommended by the guidelines was 30-37 months. The district court acknowledged that the probation office recommended incarceration of 37 months, that the prosecution requested the same, and that Rodriguez-Barbosa asked for a downward variant sentence of 24 months of incarceration. Nevertheless, the district court explained its reasons for imposing a 55-month sentence as follows:

> Like [the prosecutor], I am very troubled by this record. This record shows a flagrant disregard for the law. This record shows that the defendant is undeterred by any sentence that is imposed. He has repetitively committed the same crime, illegal reentry, on at least three occasions. And the sentences imposed of 41 months and 51 months have had no deterrent effect. In fact, the thing that is most egregious in this record is that he returned to the United States the very month that his supervised release term on his most recent conviction expired.
>
> Had he returned during the term of supervised release, he could have been convicted on this charge and punished also for a violation of the terms and conditions of supervised release. But he's savvy, and he understands—as is apparent from the nodding that he is doing right now—that supervised release once it expires lifts the possibility of a double penalty.
>
> It is also clear from this record that his criminal behavior in the United States has been accelerating from simple use and possession and even distribution of a controlled substance to resisting arrest. This is not the kind of situation where a 37-month top-of-the-guideline sentence is sufficient to reflect the seriousness of the offense, promote respect for the law, or provide just punishment. It does little to protect the public from further crimes by the defendant, and it certainly does not deter his future violation of the law.

Id. at 62–63.  The district court concluded by stating that it was imposing a sentence of 55 months in prison, "which is greater than his last sentence of imprisonment of 51 months."  Id. at 65.  Neither party objected to the sentence.

## II.    DISCUSSION

Rodriguez-Barbosa argues in this appeal that the prosecutor's statements at the sentencing hearing amounted to an argument against the imposition of a within-guidelines sentence in violation of the plea agreement, warranting relief for plain error.  We disagree and affirm the district court.

### A.  Standard of Review

In the absence of an objection below, we review Rodriguez-Barbosa's claim that the government breached the plea agreement for plain error.  Puckett v. United States, 556 U.S. 129, 143 (2009).  The four prongs of plain error review are as follows:

> First, there must be an error or defect—some sort of "[d]eviation from a legal rule"—that has not been intentionally relinquished or abandoned . . . by the appellant.  Second, the legal error must be clear or obvious, rather than subject to reasonable dispute.  Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the district court proceedings."  Fourth . . . if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

Id. at 135 (emphasis in original) (citations omitted).

In breach-of-plea-agreement cases, the "legal rule" involved is, "Where the Government obtains a guilty plea which is predicated in any significant degree on a

6

promise or agreement with the U.S. Attorney, such promise or agreement must be fulfilled to maintain the integrity of the plea." United States v. Bullcoming, 579 F.3d 1200, 1205 (10th Cir. 2009) (quoting United States v. Villa-Vazquez, 536 F.3d 1189, 1196 (10th Cir. 2008)).  Therefore, when a defendant appeals his sentence based on an allegation that the government breached its plea agreement, he or she is entitled to a remedy under the plain error standard if (1) the government breached the plea agreement, (2) the breach was plain, (3) the breach affected the defendant's sentence (i.e. absent the breach, the defendant likely would have received the sentence the prosecutor had promised to recommend), and (4) the breach affected the fairness and integrity of judicial proceedings as a whole.  See Puckett, 556 U.S. at 139–143, 142 n.4.  When the government plainly and obviously breaches a plea agreement it made with a criminal defendant and that breach causes the district court to issue a longer sentence than it otherwise would have, the defendant is entitled to relief.

### B.  No Plain Error

Rodriguez-Barbosa has failed to demonstrate that the government plainly breached the plea agreement, although this is a close case that might have come out the other way were we not operating under a plain error standard of review.  We find two of our prior cases instructive: United States v. Cachucha, 484 F.3d 1266 (10th Cir. 2007), and United States v. Yanez-Rodriguez, 555 F.3d 931 (10th Cir. 2009), abrogated by Puckett, 556 U.S. at 133–34.

In United States v. Cachucha, we held that the government "owes [a] defendant a duty to pay 'more than lip service' to a plea agreement."  484 F.3d at

7

1270 (citation omitted). We also determined in that case that a "plea agreement may be breached when '[t]he government's attorney [i]s . . . not only an unpersuasive advocate for the plea agreement, but, in effect, argue[s] against it.'" Id. (alterations in original) (citation omitted). We acknowledged that, "[w]hile a prosecutor normally need not present promised recommendations to the court with any particular degree of enthusiasm, it is improper for the prosecutor to inject material reservations about the agreement to which the government has committed itself." Id. at 1270–71.

In Cachucha, as here, the government promised in a plea agreement to recommend that the defendant receive a sentence within the advisory guideline range for involuntary manslaughter. Id. at 1270. It appears that the defendant did not request a downward departure in that case. See id. at 1267–71. Nonetheless, at sentencing, the prosecutor asked the district court if he could "address a couple issues" and then proceeded to make several statements implying that the guidelines range was too low. Id. at 1268. The prosecutor explained that, while the applicable 2000 Edition of the sentencing guidelines recommended a sentence of 10-16 months for the defendant, a 2004 amendment increased the guideline for future violations of the same crime to 37-47 months. Id. The prosecutor further stated that, although he believed the guidelines were "way too low" and that the range did not "make sense to [him] as a professional prosecutor," he was requesting a sentence within the guidelines because he did not have evidence to support a request for a departure. Id. at 1270. Applying de novo review, we determined that the prosecutor's statements at sentencing

amounted to a request for an upward variance. Id. at 1270–71. Thus, we concluded that the prosecutor breached his agreement to argue for a sentence within the guideline range.

We came out the other way in Yanez-Rodriguez. In that case, the government agreed to recommend "a sentence at the lower end of the Sentencing Guideline range," which was 41-51 months, in exchange for the defendant's guilty plea. Yanez-Rodriguez, 555 F.3d at 934. The defendant requested that the trial court impose a downward variance. Id. at 936. The prosecutor then responded: (1) by stating in a sentencing memorandum that "a sentence within the advisory guideline range of 41 to 51 months would be reasonable," id. at 937, rather than a sentence on the "lower end" of the guidelines as he had promised to do; (2) by highlighting through the cross-examination of a witness that the defendant was likely to "repeatedly violate societal norms as a result of the fact that he mis-perceives events and doesn't anticipate the consequences," id. at 938; and (3) by praising the district court, after it had imposed an upward variance, for "work[ing] so hard to try and achieve what it feels is a just sentence," id. at 939. The district court sentenced the defendant to 144 months' imprisonment, a variance upward from the guideline-recommended range of 41-51 months. Id. at 946. The defendant did not object in the district court to any alleged breach of the plea agreement by the government. Id. at 939.

On appeal, we applied de novo review as was required by our circuit precedent at the time, id. at 939, but we note that the Supreme Court has since determined that courts of appeals must apply the plain error standard of review to unpreserved

9

arguments that the government breached its plea agreement, see Puckett, 556 U.S. at 133–34. Nonetheless, applying de novo review in Yanez-Rodriguez, we rejected each of the defendant's breach-of-plea-agreement arguments. 555 F.3d at 940–43. Our holding rested primarily on the fact that the prosecutor's statements arose in arguments against the defendant's request for a downward variance and the fact that the prosecutor several times repeated that he was bound by the plea agreement to request a sentence on the lower end of the guideline recommendation (in one instance to correct the misstatement in the sentencing memorandum). Id.

Turning to our case, we affirm the defendant's sentence because, given the context surrounding the government's statements, we cannot say that the prosecutor's conduct plainly breached the plea agreement. For the purposes of this review, we assume that the prosecutor breached the plea agreement and thus move to the second prong of whether the error was plain. "An error is plain if it is clear or obvious under current, well-settled law." United States v. Wolfname, 835 F.3d 1214, 1221 (10th Cir. 2016) (internal quotation marks omitted). Cachucha establishes that "it is improper for the prosecutor to inject material reservations about the agreement to which the government has committed itself." 484 F.3d at 1270–71 (internal quotation marks omitted). But Yanez-Rodriguez provides that, where the plea agreement does not prohibit it, the government is entitled to defend against a motion for a downward variance, 555 F.3d at 940–41, as was the case here. Because this case is distinguished from Cachucha and similar to Yanez-Rodriguez in several

10

important ways, we do not think the prosecutor's conduct constituted a breach of the plea agreement that was clear or obvious under well-settled law.

Five reasons support our conclusion. First, unlike in Cachucha, where the prosecutor volunteered his reservations about the guidelines, the prosecutor here argued specifically in response to Rodriguez-Barbosa's motion for a downward variance, much like the prosecutor in Yanez-Rodriguez. The fact that the prosecutor opened and closed his remarks by stating that he "oppose[d]" Rodriguez-Barbosa's motion for a downward variance helps us draw that conclusion. Second, also unlike in Cachucha, the prosecutor's statement about the changes in the guidelines here was necessary to help the district court understand the case because it explained why the probation office recommended Rodriguez-Barbosa receive a lower sentence for his third illegal reentry conviction than he had received for either of his prior convictions for the same crime.

Third, the prosecutor did not introduce new evidence about the guidelines or Rodriguez-Barbosa's criminal history that would have surprised the trial court: everything he mentioned was included in the PSR, to which Rodriguez-Barbosa had not objected. The PSR explained Rodriguez-Barbosa's five prior felony convictions and the sentences he received for each.

Fourth, the district court stated that it understood the government was recommending incarceration of 37 months, which suggests that the district court interpreted the prosecutor's arguments as opposing a downward variance, not requesting an upward variance. Finally, we are especially persuaded by the

11

similarities between our case and <u>Yanez-Rodriguez</u> because in <u>Yanez-Rodriguez</u> we reviewed the prosecutor's conduct under a de novo standard whereas here we review under the more deferential plain error standard. Because the prosecutor's conduct in <u>Yanez-Rodriguez</u> did not constitute a breach under a de novo standard of review, the similar conduct by the prosecutor in this case cannot amount to a plain breach under the more deferential plain error standard.

For these five reasons, we are persuaded that the government did not plainly breach the plea agreement in this case. Admittedly, however, the prosecutor could have, and should have, made his points without using language like "anti-deterrent." But, nonetheless, context wins the day.[1]

### III.    CONCLUSION

For the foregoing reasons, we affirm the Rodriguez-Barbosa's sentence. This case, like most cases raising this issue, is highly fact-specific. And, we do not condone or approve of all the prosecutor's remarks in this case. However, under the generous review standard of plain error, we affirm.

Entered for the Court

David M. Ebel
Circuit Judge

---

[1] Of course, our decision does not give a prosecutor carte blanche to avoid promises made in a plea agreement by a thinly disguised effort to insert inappropriate remarks in argument resisting a downward departure. Each case will have to be reviewed on its merits to determine if the prosecution has honored its promises.