**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

THOMAS S. CACHUCHA,

Defendant - Appellant.

No. 06-2215

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-05-2156 WJ)**

Susan Bronstein Dunleavy, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant - Appellant.

David N. Williams, Assistant United States Attorney, (David C. Iglesias, United States Attorney, and Norman Cairns, Assistant United States Attorney, on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

Before **HENRY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

**HARTZ**, Circuit Judge.

Thomas Cachucha was indicted in the United States District Court for the District of New Mexico on a charge of involuntary manslaughter in Indian Country. *See* 18 U.S.C. §§ 1112(a), 1153. He pleaded guilty to the charge under

a plea agreement that anticipated a sentence of not more than 16 months' imprisonment. At sentencing, however, the prosecutor expressed distress at such a short sentence and the district court sentenced him to 30 months' imprisonment. On appeal Mr. Cachucha contends (1) that the 30-month sentence violates the Constitution's Ex Post Facto Clause because at the time of the offense, which predated *United States v. Booker*, 543 U.S. 220 (2005), such a long sentence could not have reasonably been foreseen; (2) that the sentence was unreasonable because of the district court's reliance on amendments to the United States Sentencing Guidelines (USSG) enacted after his offense, reliance on state-court sentences, and failure to consider his post-offense rehabilitation; and (3) that the government breached the plea agreement. We have jurisdiction under 28 U.S.C § 1291. We reverse the sentence on the third ground and remand for resentencing before a different judge.

I.    BACKGROUND

On October 5, 2000, Mr. Cachucha was driving while intoxicated on the Laguna Indian Reservation when his vehicle struck and killed Earl Montoya. On September 27, 2005, almost five years later, he was indicted for involuntary manslaughter. On December 12, 2005, he reached a plea agreement with the government. The agreement contained the following "Stipulations":

7.      The United States and the defendant stipulate as follows:

a.      Pursuant to U.S.S.G. § 3E1.1, the defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.  Consequently, the defendant is entitled to a reduction of two (2) levels from the base offense level as calculated under the sentencing guidelines.  This reduction is contingent upon the defendant providing an appropriate oral or written statement to the United States Probation officer who prepares the presentence report in this case in which the defendant clearly establishes his entitlement to this reduction.

b.      The parties stipulate and agree that the 2000 Edition of the Sentencing Guidelines Manual applies.  Pursuant to the guidelines, the base offense level should be 14.  The adjusted offense level should be 12 after the two point reduction for acceptance of responsibility.

8.      The United States and the defendant understand that the above stipulations are not binding on the Court and that whether the Court accepts these stipulations is a matter solely within the discretion of the Court after it has reviewed the presentence report.

R. Vol. I Doc. 17 at 3–4.

At the initial sentencing hearing on April 5, 2006, the prosecutor made several statements implying that the offense level of 12 was too low.  Asking the district court if he could "address a couple issues," R. Supp. Vol. I at 24, he stated:

Your honor, one of the difficulties, the hardest thing I have to do as a prosecutor is in cases like this when you meet with family members where there's vehicular homicide—and I know Mr. Olson [the victim's father] and the family believe this was an intentional murder.  Your honor, if I—if there was any evidence of that, I can assure the Court that we would have done that.  We just never were able to, after the fact, come up with that evidence.

But one of the problems is, when you look at involuntary manslaughter, the guidelines that were in effect at the time were the

2000 guidelines, and they set the offense level with acceptance to 10 to 16 months. The problem with the guidelines in effect at that time also, Your Honor, were that, had there been a separate person in the vehicle that had been injured and survived, the defendant would get more time under the guidelines for the victim that was injured than they do or did under the guidelines for the victims that were killed. It's very difficult to explain that to the family. I'm not sure I understand it either as a lawyer, but that's the way the guidelines were set up.

Effective 2004, November 1st, the guidelines were increased for situations like this, and they are now in the range of, I believe, 37 to 47 months. But we look at these cases, the facts of this case, as Mr. Olson indicated, the defendant and victim were friends. They knew each other. They had gone to high school together.

They were drinking during the day. They both left in separate vehicles. Mr. Montoya was in the first vehicle. The vehicle pulled over. Mr. Montoya got out of the vehicle and ended up in the road, and he was struck by Mr. Cachucha.

Was that an intentional act, Your Honor? We don't have the evidence to prove it was. It's just not there. If it was, I indicated and I told the family we would have charged that. It just isn't there.

*Id*. at 25-26.

These guidelines are way too low, but they are in effect unfortunately . . . . If there were any grounds for departure in the facts of this case, I would have. I just don't think we could have sustained them on appeal.

*Id*. at 31.

These things are tragic. They're very tragic. One of the things that I told Mr. Olson and his family, as I do in all of these cases with all of the victim's family, is the sentences that are imposed don't make any sense to me as a professional prosecutor. But one of the things that I do ask and I will reask, if you feel inclined in your heart, please write Congress. Write them a letter and say you think these sentences are too low.

Because they're the ones that are going to have to deal with this, Your Honor. They've done it a little bit but certainly not to the level that I think anyone finds acceptable.

With that, Your Honor, I know the defendant's guideline range comes out, I think, incredibly low, but those were the guidelines in effect at the time. We saw no factors. I wish I could have—Mr. Olson, I wish there was more there. I wish we could have gotten involved sooner. I don't know if that would have made a difference on the factors, but I apologize to you for any delay in the government, as a representative of the government, things that were not handled as expeditiously as they would have or should have been.

But we're still faced, Your Honor, now with sentencing, and we would ask the Court to impose a sentence within the guideline level.

*Id.* at 32-33.

In explaining its sentence, the district court noted that (1) if Mr. Cachucha had been convicted under the New Mexico homicide-by-vehicle statute he would have faced a sentence of six (and probably ten) years, and (2) under the 2006 Guidelines Mr. Cachucha's offense level would be substantially higher. The court concluded, "I do not consider offense level 12 with a range of 10 to 16 months to be a reasonable sentence," and sentenced Mr. Cachucha to 30 months' imprisonment. *Id.* at 56.

A week later, however, the government moved to vacate the sentence because Mr. Cachucha had not received notice that the district court was considering an upward variance. The motion stated that "[w]hile the United States believes that the sentence imposed by the court is properly supported by

the grounds stated by the court at sentencing, there is an issue as to whether the defendant received adequate notice of the departure on the grounds relied upon [by] the court." R. Vol. I Doc. 25 at 1. The motion was granted. Mr. Cachucha filed a sentencing memorandum contending that an above-guidelines sentence would violate the Ex Post Facto Clause.

At resentencing, the district court rejected Mr. Cachucha's ex-post-facto argument, repeated its concerns about "unwarranted sentencing disparities," and additionally noted that it was taking into account that Mr. Cachucha's previous tribal convictions went uncounted in his presentence report. R. Vol. IV at 17. It again imposed a sentence of 30 months' imprisonment.

## II. DISCUSSION

Mr. Cachucha raises several substantial issues on appeal. His ex-post-facto argument might appear to be foreclosed by our decisions holding that *Booker* can be applied to sentences imposed for pre-*Booker* offenses, *see United States v. Portillo-Quezada*, 469 F.3d 1345, 1354–56 (10th Cir. 2006) (per curiam); *United States v. Herula*, 464 F.3d 1132, 1138–39 (10th Cir. 2006); *United States v. Rines*, 419 F.3d 1104, 1106–07 (10th Cir. 2005); but we have not yet decided (nor, apparently, has any other circuit) a case in which the post-*Booker* sentence imposed was "higher than any that might realistically have been imagined at the time of the crime." *United States v. Lata*, 415 F.3d 107, 112 (1st Cir. 2005) (distinguishing sentence under review from a sentence of the quoted type); *see*

*United States Barton*, 455 F.3d 649, 657 (6th Cir. 2006) (quoting *Lata*); *cf. Miller v. Florida*, 482 U.S. 423, 432–33 (1987) (application of Florida's revised sentencing guidelines to defendant whose crimes occurred before their effective date violated Ex Post Facto Clause). And the district court's reliance on New Mexico sentencing practice would appear to contravene our recent statement that "[a]djusting federal sentences to conform to those imposed by the states where the offenses occurred would not serve the purposes of § 3553(a)(6), but, rather, would create disparities within the federal system, which is what § 3553(a)(6) is designed to discourage." *United States v. Branson*, 463 F.3d 1110, 1112 (10th Cir. 2006).

The ground on which we reverse, however, is the government's breach of the plea agreement.[1] We apply general principles of contract law when interpreting a plea agreement. *See United States v. Brye*, 146 F.3d 1207, 1210 (10th Cir. 1998). We construe ambiguities against the government as the drafter of the document. *See id.* "It is well settled that we must interpret the agreement according to the defendant's reasonable understanding of its terms." *United States v. Scott*, 469 F.3d 1335, 1338 (10th Cir. 2006).

---

[1]At oral argument the government contended that Mr. Cachucha had waived this claim at the second sentencing hearing. But the government did not advance this argument in its brief on appeal, so we need not address it. *See United States v. Brakeman*, 475 F.3d 1206, 1213 (10th Cir. 2007).

The government owes the defendant a duty to pay "more than lip service" to a plea agreement. *United States v. Saxena*, 229 F.3d 1, 6 (1st Cir. 2000). A plea agreement may be breached when "[t]he government's attorney . . . [i]s not only an unpersuasive advocate for the plea agreement, but, in effect, argue[s] against it." *United States v. Grandinetti*, 564 F.2d 723, 727 (5th Cir. 1977).

The government agrees that it "promised to recommend that Cachucha receive a sentence within the advisory guideline range and stipulated to an adjusted-offense level of [12]." Aplee. Br. at 8. In other words, it promised not to seek a higher offense level or an upward variance from the resulting Guidelines range. Yet that is what the prosecutor did by complaining about the applicable Guidelines. He stated that there were "problem[s]" with a Guidelines-based sentence, R. Supp. Vol. I at 25–26, that such a sentence was "way too low" and "incredibly low," *id.* at 31, 32, and that the Guidelines did not "make sense to [him] as a professional prosecutor," *id.* at 32. We are further troubled by the prosecutor's unprompted assertion in his motion for resentencing that Mr. Cachucha's "sentence . . . is properly supported by the grounds stated by the court at sentencing." R. Vol. I Doc. 25 at 1. These statements undermine the prosecutor's promises to Mr. Cachucha. *See United States v. Canada*, 960 F.2d 263, 269 (1st Cir. 1992) ("While it can be argued that the government stopped short of explicitly repudiating the agreement, [Supreme Court precedent] prohibits not only explicit repudiation of the government's assurances, but must

-8-

in the interests of fairness be read to forbid end-runs around them." (internal quotation marks omitted)). "While a prosecutor normally need not present promised recommendations to the court with any particular degree of enthusiasm, it is improper for the prosecutor to inject material reservations about the agreement to which the government has committed itself." *Id.* at 270 (citations omitted); *see United States v. Mitchell*, 136 F.3d 1192, 1193–94 (8th Cir. 1998). We recognize that the prosecutor did not repeat his improper remarks at the second sentencing hearing, but a breach of the plea agreement had already occurred.

There remains only the question of remedy. Ordinarily, "[w]hen the government has breached a plea agreement, it is generally preferable to remand the case to the district court for its determination as to whether defendant should be resentenced by a different judge or should be allowed to withdraw his guilty plea." *United States v. Brye*, 146 F.3d 1207, 1213 (10th Cir. 1998). But in this case Mr. Cachucha has not sought to withdraw his plea. In conformity with Supreme Court precedent, we therefore remand for resentencing by a different judge. *See Santobello v. New York*, 404 U.S. 257, 263 (1971) (When the remedy is "that there be specific performance of the agreement[,] . . . petitioner should be resentenced by a different judge."); *Brye*, 146 F.3d at 1213. As the Ninth Circuit said in the same circumstance, "We intend no criticism of the district judge by this action, and none should be inferred." *United States v. Mondragon*, 228 F.3d

978, 981 (9th Cir. 2000); *accord United States v. Fitch*, 282 F.3d 364, 368 (6th Cir. 2002).

## IV.    CONCLUSION

We REVERSE the sentence below and REMAND for resentencing before a different judge.