# IN THE SUPREME COURT OF IOWA

No. 21–0101

Submitted September 14, 2022—Filed October 21, 2022

**STATE OF IOWA,**

Appellee,

vs.

**MYCHAEL RICHARD PATTEN,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Lee (North) County, John M. Wright, Judge.

The defendant seeks further review of the court of appeals decision affirming his sentence entered after the prosecutor allegedly breached the parties' plea agreement. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT OF CONVICTION AFFIRMED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.**

Oxley, J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of the case.

Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

**OXLEY, Justice.**

The importance of plea bargaining to our system of justice, the principles which underlie the bargains themselves, and the significance of a bargain's breach have been litigated, contemplated, and explicated on a regular basis—in Iowa alone—for nearly the last half-century.[1] "Estimates suggest that ninety-five percent of criminal convictions are based on guilty pleas, most of which result from plea bargains. No less an authority than the United States Supreme Court has declared that plea-bargaining '*is* the criminal justice system.'" *Sothman v. State*, 967 N.W.2d 512, 540 (Iowa 2021) (McDermott, J., dissenting) (citation omitted) (quoting *Missouri v. Frye*, 566 U.S. 134, 144 (2012)). Given the significant rights forfeited by a criminal defendant in entering a guilty plea agreement, we place a heightened expectation on prosecutors to meticulously carry out the promises they make as part of a plea deal.

We are once again tasked with reviewing a cold record to determine whether a prosecutor satisfied a promise to make a specific sentencing recommendation, here for suspended sentences on all counts. That inquiry cannot be reduced to a bright-line, one-size-fits-all rule, as this case illustrates. The context of the prosecutor's performance is the paramount consideration for assessing compliance with plea agreements. Perhaps even more important than

---

[1]We most recently examined this issue just last term in *State v. Davis*, 971 N.W.2d 546, 556 (Iowa 2022), but as early as 1974, we recognized the significance of these agreements to our criminal justice system, *see State v. Kuchenreuther*, 218 N.W.2d 621, 624 (Iowa 1974) ("There is more at stake than just the liberty of th[e] defendant. At stake is the honor of the government, public confidence in the fair administration of justice, and the efficient administration of justice . . . ." (quoting *United States v. Carter*, 454 F.2d 426, 428 (4th Cir. 1972) (en banc))).

what the prosecutor does in any given case is how she does it—what she says, in what way, and with what implication. The record before us reveals that the prosecutor asked the court to adopt the parties' plea agreement but then, for the first time, qualified her request by explaining the "sole reason" and "sole driving force" behind agreeing to recommend suspended sentences was the victim's desire for the defendant to be part of their daughter's life. This qualification undermined—and therefore breached—the prosecutor's agreement to recommend suspended sentences, entitling the defendant to resentencing before a different district court judge.

## I. Factual & Procedural History.

Mychael Richard Patten was charged with domestic abuse assault, child endangerment, assault with a dangerous weapon, and false imprisonment following an early morning fight with his wife on September 6, 2020. Patten was angry with his wife when he confronted her in the couple's bedroom at their home in Fort Madison, believing she had been cheating on him. During the ensuing argument, Patten prevented his wife from leaving, grabbed and held her by the throat tight enough to leave bruising and impede her airflow, and threatened her with a loaded gun. The encounter lasted several hours, during which at some point the couple's three-year-old daughter entered the bedroom. It is unclear whether the girl saw the gun, but she left the bedroom shortly after entering. Patten eventually cooled off and ended the encounter but not before threatening to kill his wife if she called the police. That afternoon, Patten's wife

reported the incident to the Fort Madison Police Department, and police arrested Patten the same evening.

The prosecutor subsequently offered to recommend suspended sentences on all counts if Patten agreed to plead guilty, an offer Patten accepted. At Patten's sentencing hearing, the following exchange took place between the court and the prosecutor:

> [PROSECUTOR]: Your Honor, the State is asking that the Court adopt the plea agreement that is outlined in the Presentence Investigation Report that was agreed to by the parties.
>
> For the Court's information, *the sole reason* for this recommendation by the State is based on conversations with the victim herself. And ordinarily that doesn't necessarily drive the State's recommendation, but based on the conversations with her and her sincere desire for the Defendant to be able to have a relationship with his daughter, she felt that that was of utmost importance and priority to give him this opportunity for a suspended sentence on these matters, with the special provision that he obtain a mental health evaluation and successfully complete all recommended treatment; that that evaluation occur within ninety days of today's date, if that has not already been done, but as well issue a sentencing no contact order between herself and the Defendant.
>
> THE COURT: So how do you intend for me to follow any previous district court order or fashion a new visitation schedule?
>
> [PROSECUTOR]: Your Honor, the victim's mother is a designated third party that could be utilized to make arrangements for the child.
>
> I'm not certain, but at one point the Department of Human Services was involved. I'm not certain if that is still the case, but that could be orchestrated or allowed for communication solely for the purpose of their daughter.
>
> But for the Court's information, that is *the sole driving force* and the reason for the State's recommendation in this matter.

(Emphasis added.)

The district court declined to impose suspended sentences and instead sentenced Patten to an indeterminate combined seven-years' imprisonment, with a one-year suspended sentence to follow. In fashioning its order, the court considered Patten's age (twenty-nine at the time of the offense), his level of education, and the seriousness of the offenses. It also "weigh[ed] heavily" Patten's prior criminal history—in particular, the fact that he was on probation[2] at the time of the instant offense. The court did not explicitly address the prosecutor's statements other than to note that it "t[ook them] into account," although it did express concern over the fact "that everybody wants [Patten] to stay out of prison just because [he] can then see [his] daughter who [he] endangered."

Patten appealed, alleging the prosecutor's comments at sentencing breached her obligation under the plea agreement to recommend suspended sentences. We transferred the case to the court of appeals, which rejected Patten's argument that the prosecutor breached the plea agreement. The court of appeals did not directly address the breach issue, however, reasoning instead that the prosecutor's statements did not affect the sentencing court's decision. In reaching that conclusion, it highlighted that "[t]he [sentencing] court's thorough explanation makes clear the court considered the big picture in sentencing Patten to incarceration, regardless of how forcefully the prosecutor emphasized the State's recommendation of a suspended sentence. Furthermore, the prosecutor never referred to the sentencing factors the court cited," nor did

---

[2]The district court initially characterized the offense Patten was on probation for as a felony, but defense counsel later clarified for the court it was in fact an aggravated misdemeanor. The court noted the clarification but said the error did not affect its sentencing decision.

she ever mention the presentence investigation report's recommendation of incarceration.

As explained below, the court of appeals erred in focusing on the apparent effect of the prosecutor's statements, rather than on whether those statements breached the plea agreement. On the merits of that issue, we hold the prosecutor's statements did constitute a breach.

**II. Scope and Standard of Review.**

To appeal a sentence following a guilty plea—unless the plea is to a class "A" felony—the Iowa Code requires a defendant to establish good cause. Iowa Code § 814.6(1)(*a*)(3) (2020). Patten claims that the State breached its plea agreement to recommend suspended sentences. Because Patten raises a challenge to the sentence rather than to the guilty plea itself, good cause has been established. *See State v. Davis*, 971 N.W.2d 546, 554 (Iowa 2022) (holding that an appeal claiming the prosecutor breached the plea agreement with respect to a sentencing recommendation is a challenge to the sentence imposed, rather than to the plea itself, and constitutes good cause under section 814.6(1)(*a*)(3)); *State v. Boldon*, 954 N.W.2d 62, 69 (Iowa 2021) (same).

We review criminal sentences for correction of errors at law. *See Davis*, 971 N.W.2d at 553. To warrant reversal of a sentence, the record must show some "abuse of discretion or some defect in the sentencing procedure." *Id.* (quoting *State v. Damme*, 944 N.W.2d 98, 103 (Iowa 2020)). Breach of a plea agreement is such a defect. *See, e.g.*, *State v. Lopez*, 872 N.W.2d 159, 181 (Iowa 2015) (vacating defendant's sentence and remanding for new sentencing before

a different district judge after prosecutor breached plea agreement); *State v. Bearse*, 748 N.W.2d 211, 217–18 (Iowa 2008) (same); *State v. King*, 576 N.W.2d 369, 371 (Iowa 1998) (en banc) (per curiam) (same). "[O]nce the State has violated the plea agreement . . . the violation cannot be cured either by the prosecutor's offer to withdraw the [offending] comments or by the trial court's statement that it will not be influenced by" them. *State v. Fannon*, 799 N.W.2d 515, 521 (Iowa 2011) (quoting *State v. Birge*, 638 N.W.2d 529, 536–37 (Neb. 2002)). *But see Boldon*, 954 N.W.2d at 70 (stating that when defense counsel makes a contemporaneous objection to a plea breach, "[t]here may be some circumstances where a breach can be cured at that time").

### III. Analysis.

The court of appeals focused its analysis on whether any potential breach of the plea agreement by the prosecutor affected the sentencing proceedings. As our caselaw makes clear, however, that issue is wholly divorced from the question of whether a breach occurred in the first instance. In *State v. King*, the state made this type of "no harm, no foul" argument that no breach occurred because "the court ignored or was not influenced by the [improper] statements" made by the prosecutor. 576 N.W.2d at 371. Regardless of the impact, we held that the prosecutor's breach required specific performance of the agreement—a sentencing hearing where the prosecutor remained silent, as agreed. *Id.* We followed the lead of *Santobello v. New York*, where the United States Supreme Court required "resentencing even though the sentencing judge specifically stated that the prosecutor's recommendations did not influence his decision,"

because the prosecutor's failure to comply with his promise "tainted the entire sentencing proceeding." *Id.* (discussing *Santobello v. New York*, 404 U.S. 257, 262–63 (1971)). Resentencing is required regardless of the effect of the breach on the sentencing court's decision. *Id.*; *see also Fannon*, 799 N.W.2d at 521–22 (holding that the state cannot cure its breach of a plea agreement by withdrawing the improper remarks made during a sentencing hearing).

It may be true here that the prosecutor's statements had little sway over the sentencing court, particularly where the court rejected the collective argument to keep Patten "out of prison just because [he] can then see [his] daughter who [he] endangered." But regardless of whether a prosecutor's breach of a plea agreement was likely ignored by the court, *King*, 576 N.W.2d at 371, or even explicitly ignored, *Santobello v. New York*, 404 U.S. at 262, a breached plea agreement leaves an indelible taint on the proceedings we cannot excuse or overlook. The court of appeals should have focused its attention on whether the prosecutor in fact breached the plea agreement. We turn to that issue now.

"The relevant inquiry in determining whether the prosecutor breached the plea agreement is whether the prosecutor acted contrary to the common purpose of the plea agreement and the justified expectations of the defendant and thereby effectively deprived the defendant of the benefit of the bargain." *Boldon*, 954 N.W.2d at 71 (quoting *State v. Frencher*, 873 N.W.2d 281, 284 (Iowa Ct. App. 2015)). A plea agreement is "akin to [a] contract[]," *Davis*, 971 N.W.2d at 556 (quoting *State v. Beres*, 943 N.W.2d 575, 582 (Iowa 2020)), but one that carries significant constitutional implications, *see State v. Horness*,

600 N.W.2d 294, 298 (Iowa 1999). Therefore, "we are compelled to hold prosecutors and courts to the most meticulous standards of both promise and performance." *Id.* (quoting *State ex rel. Brewer v. Starcher*, 465 S.E.2d 185, 192 (W. Va. 1995)). We require "strict, not substantial, compliance with the terms of plea agreements." *Fannon*, 799 N.W.2d at 522; *see also Bearse*, 748 N.W.2d at 215 (noting the "need for strict compliance with [plea] agreements"). "[V]iolations of either the terms or the spirit of the agreement," *Horness*, 600 N.W.2d at 298 (quoting *Stubbs v. State*, 972 P.2d 843, 845 (Nev. 1998)), even if seemingly minor, "are intolerable and adversely impact the integrity of the prosecutorial office and the entire judicial system," *King*, 576 N.W.2d at 370.

Where, as here, an agreement calls for a specific sentencing recommendation, we have relied on the ordinary meaning of "recommend" to distill some of a defendant's justified expectations. Prosecutors cannot "simply inform[] the court of the" agreement, they must "present the recommended sentences with [their] approval, . . . commend the[] sentences to the court, and . . . otherwise indicate to the court that the recommended sentences are supported by the State and worthy of the court's acceptance." *Horness*, 600 N.W.2d at 299; *see also Lopez*, 872 N.W.2d at 179 n.7 (declining to reexamine *Horness* and other cases in light of *United States v. Benchimol*, 471 U.S. 453, 455–56 (1985) (per curiam)).

We have also framed the question from the opposite perspective: What must a prosecutor *not* do in making a recommendation? Adopting federal

caselaw on the issue, we have said that a prosecutor must not inject "material reservations" about a recommendation into the proceedings. *Boldon,* 954 N.W.2d at 71 (citing *United States v. Cachucha,* 484 F.3d 1266, 1270–71 (10th Cir. 2007)); *Frencher,* 873 N.W.2d at 284 ("Where the State technically complied with the agreement by explicitly recommending the agreed-upon sentence but expressed material reservations . . . it can be fairly said the State deprived the defendant of the benefit of the bargain and breached the plea agreement."). In *State v. Frencher* the court of appeals listed some examples of how a prosecutor expresses material reservations about a recommendation, which we repeated in *State v. Boldon*: both explicit reservations, such as "express[ing] regret for entering into the plea agreement"; as well as implicit reservations, such as "proposing alternative sentences[,] . . . requesting 'an appropriate sentence' rather than the agreed-upon sentence[,] . . . making a recommendation and then reminding the court it is not bound by the plea agreement[,] or . . . emphasizing a more severe punishment recommended by the presentence investigation author." *Frencher,* 873 N.W.2d at 285; *see also Boldon,* 954 N.W.2d at 71–72. These examples are not exhaustive but help illustrate the wide range of conduct that may cast doubt on whether the prosecutor is truly recommending the proposed sentence.

Case in point—here we have a record which, when viewed from a distance, seems innocuous. The prosecutor asked the court to adopt the written plea agreement, which included the joint recommendation for suspended sentences. As noted earlier, however, we require "strict compliance" with both the letter and

spirit of plea agreements, which requires us to engage in a context-specific inquiry into the State's compliance with promises made in a plea agreement. *See Bearse,* 748 N.W.2d at 215. On closer analysis of the subsequent discussion with the court, it appears the prosecutor was not giving her own recommendation; but rather, was simply transmitting the purported recommendation of the victim.[3]

The only affirmative statement the prosecutor made regarding *the State*'s position was the perfunctory request for "the Court [to] adopt the plea agreement," which was immediately followed by the repeated emphasis of the victim's wishes as the "sole reason" and the "sole driving force" for the recommendation. The natural implication of the latter statements, particularly in light of their repetition, is that the prosecutor did not personally believe suspended sentences were appropriate, since her professional view of their appropriateness would alone be a sufficient justification for the recommendation. The rest of the prosecutor's discussion focused exclusively on the victim's position, explaining that for the sake of "*her* [(the victim's)] sincere desire for [Patten] to be able to have a relationship with his daughter, *she* felt that that was of utmost importance and priority to give [Patten] this opportunity for a suspended sentence." (Emphasis added.) In sum, the prosecutor gave the

---

[3]Indeed, it is unclear whether these actually were the victim's wishes in this case. Patten's guilty plea was filed November 20, 2020, but in a victim-impact statement completed December 13, the victim indicated she was "afraid that if [Patten] is let out on probation, that he would try to come after [her] again," and that she "personally would not feel safe if he was released." Nothing else in the record indicates what the victim's wishes were, either before or after the victim-impact statement, other than the prosecutor's statements at the subsequent sentencing.

court little to go on vis-à-vis the State's position, and went out of her way to make it clear it was *the victim* who believed the requested suspended sentences were appropriate, listed *the victim*'s justifications, and indicated twice that—absent *the victim*'s recommendation—there was no basis for *the State*'s recommendation. But the plea bargain obligated the State, not the victim, to recommend suspended sentences.

The State argues the prosecutor's comments served as an explanation of the State's motivation for entering the plea agreement, and the explanation did not undermine its recommendation; in essence, that the prosecutor was only providing context for her recommendation. But this argument assumes a recommendation was actually made in the first place; simply having a reason to make a recommendation does not mean one has fulfilled her obligation to actually make the recommendation.

Context informs the existence of a recommendation, not vice-versa. The prosecutor's recommendation to adopt the plea agreement was not set in concrete as soon as the words came out of her mouth, such that we need not consider the rest of the colloquy. Rather, the recommendation is only fully cemented by the entire set of circumstances surrounding the prosecutor's performance. Although we agree it is often helpful (and sometimes even necessary) to explain a recommendation, doing so does not inherently advance a recommendation, *cf. Benchimol,* 471 U.S. at 456 (noting the government's "suggest[ion] that spreading on the record its reasons for agreement to a plea bargain in a particular case—for example, that it did not wish to devote scarce

resources to a trial . . . would frequently harm, rather than help, the defendant's quest for leniency"), just as it does not inherently undercut one.

Here, the manner in which the prosecutor presented this explanation undercut any impression that the State was in favor of the proposed suspended sentences. By informing the court that the victim's wishes were the sole reason for the State's agreement, without endorsing the recommendation as her own or expressing agreement with the victim's reasoning, the prosecutor was not merely providing context to support an otherwise questionable recommendation. *See, e.g.*, *State v. Schlachter*, 884 N.W.2d 782, 786 (Iowa Ct. App. 2016) ("The correct recitation of Schlachter's [otherwise unavailable] criminal record was not a distraction from the prosecutor's recommendation, but strengthened it by alerting the court the prosecutor was aware of Schlachter's criminal record and was making the recommendation with that knowledge."). Rather, although perhaps not intentionally, she implicitly conveyed material reservations about the recommended suspended sentences. *Cf. Bearse*, 748 N.W.2d at 215 ("[I]nadvertence by a prosecutor will not excuse noncompliance."). Having found at least implicit material reservations in the prosecutor's explanation, we cannot conclude that the prosecutor fulfilled her promise to recommend suspended sentences.

We emphasize that this is a highly context-specific analysis. In another case, it may be no surprise to hear a prosecutor give a similar explanation. Even here, had the prosecutor at least said the State stands behind or supports the victim's belief that suspended sentences were appropriate in this case, we might

reach a different resolution. Thus, we do not hold that discussion of victims' interests at sentencing is categorically improper. *Cf. Davis*, 971 N.W.2d at 560 (Christensen, C.J., concurring in part and dissenting in part) ("Because victim rights compliance is essential to the sentencing hearing and the factors that a court must weigh in exercising its discretion, consideration of and commentary regarding the victim's wishes may be relevant and appropriate at the sentencing." (quoting *State v. Bokenyi*, 848 N.W.2d 759, 772 (Wis. 2014))). We do hold that—in this instance—the prosecutor's reference to the victim's wishes as the "sole reason" for recommending suspended sentences expressed material reservations about the prosecutor's recommendation by indicating, "with a wink and a nod," *Bearse*, 748 N.W.2d at 218, that the recommendation was not really coming from the State at all, but rather from the victim.[4] The State cannot undertake an obligation to give its own recommendation, then act as a mere conduit for victims or other third parties. The prosecutor's acquiescence in whatever the victim's recommendation happened to be is not what Patten bargained away his constitutional rights for.

---

[4]If a prosecutor is truly indifferent as to the appropriate sentence in a case and cannot endorse the recommendation as her own, an agreement to remain silent at sentencing might be the more appropriate course of action. As we said in *Horness*:

> [T]he State's promise to recommend specific sentences to the court requires the prosecutor to present the recommended sentences *with his or her approval*, to commend these sentences to the court, and to otherwise indicate to the court that the recommended sentences *are supported by the State* and worthy of the court's acceptance. . . . If the prosecutor keeps this duty in mind when negotiating a plea agreement, so that any agreed-upon sentencing recommendation is "fair" under the circumstances, then the prosecutor should have no problem in truly recommending the negotiated sentence to the court.

600 N.W.2d at 299 (emphasis added) (citation omitted).

Accordingly, we hold that the prosecutor breached the parties' plea agreement. Patten was deprived of the benefit of his bargain—a recommendation *from the prosecutor*, free of material reservations.

The proper remedy for the State's breach requires, as Patten requests, "resentencing by a different judge, with the prosecutor obligated to honor the plea agreement and sentencing recommendation." *Davis*, 971 N.W.2d at 558 (majority opinion) (quoting *Lopez*, 872 N.W.2d at 181). "We intend no criticism of the district judge by this action, and none should be inferred." *Lopez*, 872 N.W.2d at 181 (quoting *Cachucha*, 484 F.3d at 1271).

**IV. Conclusion.**

For the foregoing reasons, we vacate the decision of the court of appeals and remand the case to the district court for resentencing before a different judge.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT OF CONVICTION AFFIRMED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.**

All justices concur except May, J., who takes no part.