# IN THE COURT OF APPEALS OF IOWA

No. 23-0171
Filed August 21, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CODY JAMES RUDEN,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.


    A defendant appeals his sentence for multiple convictions, alleging ineffective assistance of counsel and a breach of the plea agreement by the prosecutor. **AFFIRMED.**


    Charles D. Paul of Nidey Erdahl Meier & Araguás, PLC, Cedar Rapids, for appellant.

    Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.


    Considered by Schumacher, P.J., and Ahlers and Badding, JJ.

**SCHUMACHER, Presiding Judge.**

Cody Ruden appeals his sentence following guilty pleas to eighteen charges, alleging ineffective assistance of counsel and a breach of the plea agreement by the prosecutor. We are prohibited from deciding Ruden's ineffective assistance of counsel on direct appeal.[1] We conclude there was no breach of the plea agreement by the prosecutor. Accordingly, we affirm.

I.      **Background Facts and Proceedings**.

Ruden pled guilty to sexual abuse in the third degree, a class "C" felony, two counts of attempting to entice a minor under the age of sixteen, aggravated misdemeanors, and fifteen counts of sexual exploitation of a minor, aggravated misdemeanors. Ruden entered his guilty pleas as part of a plea agreement in which the State agreed to recommend a prison sentence not to exceed sixteen years, a reduction from the maximum sentence of forty-four years. The plea agreement provided that both the State and Ruden were free to argue at sentencing. And that is what occurred at the hearing, with the State arguing for incarceration, and Ruden arguing for a suspended sentence, probation, and placement at a residential correctional facility.

Following the contested sentencing hearing, the court sentenced Ruden to serve an indeterminate prison sentence not to exceed sixteen years. Ruden appeals. He alleges ineffective assistance of counsel and contends the State breached the plea agreement by conveying to the court that a sentence longer

---

[1] The attorney who represented Ruden at plea and sentencing is the same attorney who represents Ruden on appeal, claiming ineffective assistance of counsel.

than sixteen years was warranted and the only reason the State was limiting its recommendation to a sixteen-year sentence was because it was required to do so by the plea agreement.

Before reaching the merits, we first consider whether we have authority to decide Ruden's appeal. Because Ruden pled guilty, he must establish good cause before our court has jurisdiction to hear his appeal. *See* Iowa Code § 814.6(1)(a)(3) (2023). We conclude that we have jurisdiction to hear the appeal as Ruden met his burden of establishing good cause by claiming the prosecutor breached the plea agreement. *See State v. Boldon*, 954 N.W.2d 62, 69 (Iowa 2021) (holding that challenging a claimed breach of the plea agreement establishes good cause to appeal).

As Ruden has established good cause as to the breach-of-plea-agreement issue, we have jurisdiction over the entire appeal. *See State v. Rutherford*, 997 N.W.2d 142, 146 (Iowa 2023). But Iowa Code section 814.7 deprives us of any authority to decide Ruden's claim of ineffective assistance of counsel on direct appeal. *See id.* at 146–48. We therefore do not address Ruden's ineffective-assistance-of-counsel claim and limit our discussion to Ruden's claim that the prosecutor breached the plea agreement.[2]

## II.    Standard of Review

We review challenges to criminal sentences for correction of errors at law. *State v. Patten*, 981 N.W.2d 126, 130, (Iowa 2022). We vacate a sentence when

---

[2] The State's appellate briefing is limited to Ruden's claim of ineffective assistance of counsel. We determine that Ruden's brief sufficiently addresses the breach of plea agreement issue and reach the merits.

the sentencing court abuses its discretion or there is some defect in the sentencing procedure. *Id.* A prosecutor's breach of the plea agreement is a defect in the sentencing procedure. *Id.*

### III. Analysis

When, as here, the prosecutor promises to make a sentencing recommendation, we require the prosecutor to fulfill that promise. *See State v. Davis*, 971 N.W.2d 546, 556 (Iowa 2022). Fulfilling the promise requires more than just reciting the recommended sentence; it requires that the prosecutor present the recommendation in such a way that makes it clear the recommendation has the prosecutor's approval, is supported by the State, and is worthy of the court's acceptance. *Id.* at 557.

Fulfilling the promise also prohibits the prosecutor from expressing material reservations—both explicit and implicit—about the recommendation. *Boldon*, 954 N.W.2d at 71–72. Suggesting a more severe sentencing alternative is an example of expressing an implicit reservation about the sentence. *See State v. Horness*, 600 N.W.2d 294, 299 (Iowa 1999). Another example of expressing implicit reservations about a sentence is to emphasize the nature of the offense to suggest incarceration would be more appropriate when the plea agreement called for a recommendation of probation. *See State v. Lopez*, 872 N.W.2d 159, 178–80 (Iowa 2015).

"The relevant inquiry in determining whether the prosecutor breached the plea agreement is whether the prosecutor acted contrary to the common purpose of the plea agreement and the justified expectations of the defendant and thereby effectively deprived the defendant of the benefit of the bargain." *State v. Frencher*,

873 N.W.2d 281, 284 (Iowa Ct. App. 2015). Where the prosecutor has agreed to make a particular sentencing recommendation, the prosecutor must do "more than simply inform[] the court of the promise the State has made to the defendant with respect to sentencing. The State must actually fulfill the promise." *Id.* (quoting *State v. Bearse*, 748 N.W.2d 211, 216 (Iowa 2008)). Here is what the prosecutor argued at sentencing:

> Thank you, your Honor. Your Honor, in this matter there's a plea agreement and under that plea agreement the State is only allowed to request a term of 16 years in prison, so that is exactly what the State is requesting today.
>
> This defendant is a threat to the community. This defendant is a threat to the most vulnerable part of this community, minors and underage children in this matter. He pled guilty to sexually abusing an underage girl . . . who is here in the courtroom today.
>
> She needed a Wi-Fi password. It was COVID times, and she was home from school and isolated from her friends. The defendant took advantage of that and coerced her into a sex act in order to receive a Wi-Fi password. He's taking no accountability, according to the [presentence investigation (PSI)] and to his own therapist, who submitted a report in this matter.
>
> But this one act was not the end. Then twice on two separate dates the defendant again attempted to entice [the minor child victim] to perform oral sex on him.
>
> On February 2 of 2021 he texted her, "Wannacome give me prebday head and bday sex tomorrow?" Which she refused. He then continued, "Even tonight do you want my cock in your ass or not."
>
> On February 26 of 2021, the harassment and enticement continued. She again asked for the Wi-Fi password and he said, "Changed it done giving people shit for free 'why'"? And [the minor child victim] responded, "Do you want money?" Meaning money in exchange for the password. And he responded, "Sucked more." A conversation continues about oral sex for a Wi-Fi password.
>
> The defendant is also a threat to children of all ages. He entered pleas to all of these other counts of possession of minors in sexual acts. Child pornography, as it's generally called, is not a victimless crime. These children continue to be exploited every time Mr. Ruden looks at their photographs for sexual pleasure.[3]

---

[3] While there was no objection to the terminology used at sentencing, we note that at least one court has noted that child pornography is more appropriately called

I'm not going to read all of the depictions, but the images that Mr. Ruden looked at for his own sexual pleasure were children ranging in age from Tanner Stage 1, which is about as young as you can get for a child, someone generally under the age of eight, to Tanner Stage 2, which is someone who is usually 10 or 11 years old.

There were images of a completely nude female child with her legs spread showing her vagina in a lascivious manner, a female child with legs spread and adult male penis inside of her vagina. That child was Tanner Stage 1. These are hard things to even read.

It goes on and on. Several counts of these things. And I would also note that one of the counts includes a video that the defendant made of a minor child that he is related to showing her in a state of undress and that he took a blanket off of her.

During his PSI, the defendant was not honest about what he did. We even had to recess and come back and do the sentencing hearing today because the defendant decided to proclaim his innocence during the PSI interview process after he on the record in front of a judge admitted to these offenses.

[The investigating officer], who was deposed by the defense during this case—for instance, he told the PSI interviewer that he was intoxicated when he got arrested, trying to explain why he was confused, and he might have made some admissions, that he was hanging out with friends. We know from her deposition and the police report that's not true.

[The investigating officer] found the defendant alone masturbating when he was arrested. She's trained to detect signs of intoxication. He was not intoxicated. He admitted to her during the interaction that he likes, quote, "young porn," saying, quote, "young teen porn," and, quote, "I type in 'little girl'", quote, when searching for pornography.

We're going to hear a lot of supposedly mitigating factors from the defense during this hearing. I would submit the fact that the defendant entered guilty pleas and didn't hold the State to its burden should not be considered mitigating.

The State has no concern about its ability to meet its burden if this case had gone to trial. The important thing to focus on here is the defendant's lack of insight into the harm he has caused not only [to the minor child victim], but the other children, and his complete lack of insight or sympathy for what he has done to these kids.

The PSI says he has a limited understanding of the seriousness of the sexual abuse. These interviews talk about that

---

"Child Sexual Abuse Material." Because of the lack of consent, it is not possible to make "pornography," instead it is evidence of a child being sexually abused, making "Child Sexual Abuse Material" or "Child Sexual Abuse Images" a more appropriate title. *See United States v. Larson*, No. 5:19-CR-50165-RAL, 2023 WL 196171, at *1 n.1 (D.S.D. Jan. 17, 2023).

he has mental health problems, he has medical problems. Well, the fact is, these make him more of a danger to the community. He lacks impulse control. He has ADHD, which leads to impulsive acts, and he is noncompliant with his ADHD medication.

The PSI recommends prison, and that is the only acceptable outcome for this case because the community is not safe from the defendant. Any individual from [the minor child victim]'s age and younger is not safe if this defendant is not in prison.

So the State is recommending the maximum we are allowed, which is that the ten-year prison sentence recommended by the PSI be implemented and that, additionally, three of the aggravated misdemeanors be run consecutive for that period of sixteen years.

In support of his breach of the plea agreement argument, Ruden relies on *Bearse*, 748 N.W.2d at 211. In *Bearse*, the prosecutor initially asked that the sentencing court impose incarceration. *Id.* at 213. When informed by the sentencing court that such recommendation was contrary to the plea agreement, the prosecutor stated that the court was not bound by the plea agreement, but clarified that the State would abide by the plea agreement. *Id.* Ruden's sentencing hearing is easily distinguishable. The prosecutor never asked for a greater period of incarceration than agreed to, never informed the court that the court could reject the plea, and informed the court twice about the term of incarceration the State was recommending in accordance with the plea agreement.

Ruden's facts are more akin to *Bolden*, in which the parties bargained for each party to allow to make recommendations for sentencing. 954 N.W.2d at 66. In concluding that the prosecutor did not breach the plea agreement, our supreme court stated:

Here, the prosecutor recommended concurrent sentences in accord with the parties' plea agreement. The prosecutor stated, "The State is recommending that the counts run concurrently with each other." The prosecutor then went on to discuss those factors that justified incarceration. At no time during the sentencing proceeding did the prosecutor suggest consecutive sentences would be more

appropriate than concurrent sentences. The parties agreed the State would recommend concurrent sentences but be free to argue for a term of incarceration while the defendant would be free to argue for a deferred judgment or suspended sentence. That is what occurred.

The fact the parties bargained for a contested sentencing hearing distinguishes this case from those in which the prosecutor technically complied with the plea agreement but expressed material reservations regarding the plea agreement or sentencing recommendation. *See United States v. Cachucha*, 484 F.3d 1266, 1270–71 (10th Cir. 2007) ("While a prosecutor normally need not present promised recommendations to the court with any particular degree of enthusiasm, it is improper for the prosecutor to inject material reservations about the agreement to which the government has committed itself." (quoting *United States v. Canada*, 960 F.2d 263, 270 (1st Cir. 1992))). Where the prosecutor technically complied with the plea agreement but expressed material reservation regarding the same, "it can be fairly said the State deprived the defendant of the benefit of the bargain and breached the plea agreement." *Frencher*, 873 N.W.2d at 284.

Ruden has failed to establish that the prosecutor acted contrary to the common purpose of the plea agreement and thereby deprived him of the benefit of the bargain. *See id.* As in *Boldon*, the prosecutor was free to argue for incarceration. 954 N.W.2d at 66. That is what occurred here. The prosecutor twice informed the court that the State was asking the court to impose the terms set forth in the plea agreement, which was only to cap the maximum term of

incarceration.  The State fulfilled its promise.  Accordingly, we affirm as to Ruden's sentencing challenge.

**AFFIRMED.**

Badding, J., concurs; Ahlers, J., dissents.

**AHLERS, Judge** (dissenting).

The majority and I see eye to eye on the legal principles at issue in this case, but we have different views on how those principles apply. As a result, I must respectfully dissent.

Everyone agrees the State entered a plea agreement that obligated it to recommend a prison sentence of no longer than sixteen years. The prosecutor didn't get off to a very good start. As quoted in the majority opinion, when given the floor to give the State's position on sentencing, the prosecutor told the court that, under the terms of the plea agreement, "the State is only allowed to request a term of sixteen years in prison, so that is exactly what the State is requesting today." The only purpose I can see for the prosecutor adding the "only allowed" comment was to suggest that a longer sentence was more appropriate. In my view, this was probably already an impermissible reservation about the agreed-upon recommendation. *See State v. Patten*, 981 N.W.2d 126, 131–32 (Iowa 2022) (prohibiting express or implied reservations about a recommended sentence); *State v. Horness*, 600 N.W.2d 294, 299 (Iowa 1999) (holding that suggesting a more severe sentencing alternative is an example of expressing an implicit reservation about the sentence). But I recognize that, in the heat of the moment, slips of the tongue can occur that result in less-than-ideal phrasing. So, I give the prosecutor the benefit of the doubt and look at what came next to see if the "only allowed to request" reservation was a slip of the tongue or part of an effort to undermine the agreed-upon recommendation.

What came next is the lengthy harangue vilifying Ruden that is quoted verbatim in the majority opinion. Don't get me wrong in how I characterize the prosecutor's statement. This was a contested sentencing, and Ruden was asking for an incredibly light sentence under the circumstances—maybe even offensively light, in the eyes of the prosecutor—so the prosecutor was justified in aggressively highlighting some of the negative sentencing factors in an effort to get the court to go along with the State's recommendation. But the fact that the sentencing was contested did not relieve the prosecutor of her obligation to present the State's recommendation in such a way that made it clear the recommendation had the prosecutor's approval, was supported by the State, and was worthy of the court's acceptance. *See Patten*, 981 N.W.2d at 131. I challenge anyone to find anything in the prosecutor's lengthy statement that suggests the prosecutor approved of the sixteen-year recommendation, that it was supported by the State, or that it was worthy of the court's acceptance. Such commendation is simply not there.

Not only did the prosecutor not make the required commendation of the recommended sentence, but at the end of her statement, she doubled down on the theme with which she started—that being apparent disgruntlement about being capped at a recommendation of sixteen years—when she again said the State was recommending "the maximum we are allowed." Especially coming on the heels of having emphasized the nature of Ruden's offense and describing how dangerous he is, this statement impliedly expresses material reservations about the recommended sentence of sixteen years by suggesting a longer sentence is warranted. *See State v. Lopez*, 872 N.W.2d 159, 178–80 (Iowa 2015) (noting that emphasizing the nature of the offense to suggest a harsher sentence than that

recommended is an example of expressing implicit reservations about the recommendation). The prosecutor's closing remark not only communicated an implied reservation about the recommended sentence, but it shows the introductory remark stating the same theme was no slip of the tongue.

If I understand the majority opinion correctly, it relies on the prosecutor's comments at the beginning and end of her statement where she states that the State recommends a term of incarceration of sixteen years as having satisfied the prosecutor's obligation. But even ignoring the fact that I believe those statements are tainted by the "only allowed" phrasing I've already discussed, these statements are nothing more than a recital of the sentencing recommendation, and our case law is quite clear that mere recital of the recommendation doesn't cut it. *See State v. Davis*, 971 N.W.2d 546, 557 (Iowa 2022) ("[W]e have made clear the prosecutor must do more than simply recite the agreed recommended sentence." (quoting *Lopez*, 872 N.W.2d. at 173)). To fulfill the State's obligation, the prosecutor was required to indicate that the recommended sentence had the prosecutor's approval, was supported by the State, and was worthy of the court's acceptance of it. *Patten*, 981 N.W.2d at 131 ("Prosecutors cannot simply inform the court of the agreement, they must present the recommended sentences with their approval, commend the sentences to the court, and otherwise indicate to the court that the recommended sentences are supported by the State and worthy of the court's acceptance." (cleaned up) (citation omitted)). The prosecutor did not do that.

Because the prosecutor failed to make the required commendation of and impliedly expressed reservations about the recommended sentence, the State

breached the plea agreement.  As a result, I would vacate Ruden's sentences and remand for resentencing before a different judge, with the prosecutor obligated to honor the plea agreement and sentencing recommendations.  *See Lopez*, 872 N.W.2d at 181.