**IN THE COURT OF APPEALS OF IOWA**

No. 24-0739
Filed April 9, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**EVAN JAMES SHELTON,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Dubuque County, Mark T. Hostager, Judge.

    A defendant argues the State breached the plea agreement that was a precursor to his guilty plea. **AFFIRMED.**

    Karmen R. Anderson of Anderson & Taylor, PLLC, Des Moines, for appellant.

    Brenna Bird, Attorney General, and David Banta, Assistant Attorney General, for appellee.

    Considered without oral argument by Greer, P.J., and Langholz and Sandy, JJ.

**GREER, Presiding Judge.**

Evan Shelton was charged with theft in the third degree after video surveillance footage showed him slipping a bracelet on his wrist, passing all security points, and leaving Walmart without paying. *See* Iowa Code § 714.2(3) (2023) ("The theft of property . . . not exceeding seven hundred fifty dollars in value by one who has before been twice convicted of theft, is theft in the third degree."). Shelton and the State negotiated a binding plea agreement, pursuant to Iowa Rule of Criminal Procedure 2.10(3), for a suspended prison sentence and a two-year term of probation. Shelton argues the State breached the plea agreement by attempting to inform the court of an alternative sentencing regime discussed in subsequent plea negotiations.

The State argues it was not bound to recommend any sentence, and it stood by the terms of the plea agreement when asked to make a recommendation. We find that the State did not breach the plea agreement when asked to support it, so we decline to vacate the sentence.

**I. Background Facts and Proceedings.**

On September 18, 2023, a Walmart loss prevention employee alerted law enforcement to the theft of a chain bracelet worth $198. After reviewing surveillance footage, an employee identified the culprit—a man who slipped the bracelet on his wrist and exited Walmart without purchasing the bracelet. Law enforcement solicited the help of the public to identify the man, posting a still photo of surveillance footage online. Shelton contacted law enforcement, stating he was the man in the photo but denying he stole the bracelet.

After he was criminally charged, Shelton negotiated with the State a written guilty plea agreement, contingent upon the court accepting the terms of the written plea, in accordance with Iowa Rule of Criminal Procedure 2.10(3) (2024).[1] Shelton's plea agreement allowed for a fully suspended two-year term of incarceration and two years of informal probation, with imposition of other fines and surcharges.

On March 15, 2024, the court set the matter for sentencing but alerted the parties it did "not intend to bind itself to the [plea] negotiations" and that a record would be made at the sentencing hearing as to whether Shelton would "go forward with the plea on a non-binding basis."

At the April 1 sentencing hearing, the court reiterated it would not be bound by the sentencing agreement in the written plea agreement and offered Shelton the opportunity to withdraw his plea and proceed to trial. The sentencing court explained to Shelton the ramifications of the non-binding status as follows:

> And I did an order saying I'm not willing to accept the guilty plea on that basis. And so if you go forward with the plea on a nonbinding basis, you still have your—obviously your plea agreement with the prosecution. They're still required to follow through with their end of the plea negotiation and make the sentencing recommendation that they've agreed to. But the sentencing judge, whether it's me today or a different judge on a different day, on a nonbinding plea isn't required to follow that sentencing recommendation. The judge could sentence you to something else all the way up to the maximum.

---

[1] Iowa Rule of Criminal Procedure 2.10 addresses plea bargaining, and a "Rule 2.10 plea agreement" refers to a plea agreement conditioned upon the court's acceptance. *See* Iowa R. Crim. P. 2.10(3). If the court declines to accept the plea agreement, the court is then required to "afford the defendant the opportunity to withdraw the plea." Iowa R. Crim. P. 2.10(3)(b)(1).

Shelton opted to continue with his guilty plea. The court accepted Shelton's plea and asked the State for its sentencing recommendation. The State responded, "[T]he State does believe that the negotiated plea terms that we came up with with the defense are appropriate in this circumstance, and we would ask the Court to follow that agreement." Shortly thereafter, the hearing was suspended to give Shelton time to review the criminal history report that had just been provided to him.

Following the opportunity to review the report, the parties reconvened on April 3 with the same judge and a different prosecutor—the assistant county attorney who had approved the plea agreement. The continued hearing started with a discussion by the district court related to pending charges in two other counties. Shelton explained that charges in Black Hawk County were still pending but the charges in Scott County had been resolved by a sentence of eighty days, credit for time served, a fine, and probation for one year. He also referenced a pending parole case in Linn County. When asked to comment on Shelton's criminal history, the State addressed the plea agreement and started to reference other plea negotiations, but the sentencing court cut off any discussion over the terms. After the parties made recommendations for sentencing, with the State confirming the written plea agreement, the court imposed a sentence that included two years of incarceration, a fine of $855 plus a 15% surcharge, and victim restitution of $198 to Walmart, ordering that Shelton's sentence run consecutively to any other existing sentence.

Shelton appeals his sentence.

**II. Standard of Review.**

"We review criminal sentences for correction of errors at law." *State v. Patten*, 981 N.W.2d 126, 130 (Iowa 2022). "To warrant reversal of a sentence, the record must show some 'abuse of discretion or some defect in the sentencing procedure.'" *Id.* (citation omitted). "Breach of a plea agreement is such a defect." *Id.*

**III. Discussion.[2]**

Shelton makes a single claim on appeal—the prosecutor breached the plea agreement by trying to present an alternative sentencing recommendation and offering lackluster support for the sentencing agreement during the sentencing hearing. The State, in turn, argues it was not bound to recommend a specific sentence and, if it was bound, it did not breach the terms or spirit of the plea agreement.

In the written guilty plea, Shelton and a prosecuting attorney confirmed their consent to the following terms:

> The terms of the plea agreement are as follows:
>
> - Jail: two (2) years (two (2) years suspended)—credit for time served;
> - Probation: two (2) year(s) informal probation,
> - Fine: $855.00 ($855.00 suspended); and any applicable surcharges (15%)—see paragraph 12;
> - Court Costs: Defendant shall pay all court costs, including those in dismissed charges, if any, subject to Category B Restitution determination;

---

[2] We may only reach the merits of Shelton's appeal if he establishes "good cause." *See* Iowa Code § 814.6(1)(a)(3). Because Shelton claims the prosecutor breached the plea agreement, Shelton has good cause. *See State v. Davis*, 971 N.W. 2d 546, 549 (Iowa 2022) ("[T]he defendant's brief made clear he was appealing sentencing errors, including the prosecutor's alleged breach of a plea agreement. Our precedents hold such appeals satisfy the statutory good-cause requirement.").

- Court-Appointed Attorney Fees: see paragraph 28, subject to Category B Restitution determination;
- Restitution: $198.00 payable to the Clerk of Courts on behalf of Walmart.

These terms were followed by this statement:

**Prosecuting Attorney's Initials/Signature** (Confirming Agreement) _____
**If the prosecuting attorney does not initial or sign where indicated, the State must file an approval confirming the terms of the plea agreement within two working days of the date this plea is filed.**

The agreement indicates the State and Shelton came to a "meeting of the minds" during plea negotiations, assenting to a suspended two-year prison sentence and two years of informal probation in exchange for a guilty plea to the theft charge. And the guilty plea—with the parties' binding sentencing agreement—was filed with the court for the sentencing judge's consideration. The expectation was that the court would accept the plea agreement as binding on both the State and Shelton, but the district court exercised its discretion to reject the parties' terms at the initial sentencing hearing.

In the rescheduled sentencing hearing, Shelton and the sentencing court discussed the criminal history report provided by the State. When the court asked the State for any corrections or additions to that criminal history, the State interjected an "update" and stated, "Once the Court rejected that—or found that [the sentencing agreement] would not be binding, the State gave the defendant another plea offer, which he rejected, Your Honor. And the reason for the State's offer was also based on what they did in Scott County, Your Honor." The court clarified it "only takes into consideration entries on the criminal history that show either a conviction or a deferred judgment" but noted it had been updated on the Scott County matter. As for the convictions or deferred judgments for theft

offenses, the court was informed there were twelve listed. The exchange between the prosecutor and the court continued:

> THE COURT: All right. . . . I'm willing to consider it as 12, then.
>
> All right. [Prosecutor], is there anything the State wants to say in support of the plea bargain?
>
> THE PROSECUTOR: Yes, Your Honor.
>
> Just as stated before, there was that plea offer that was in there, but then the State amended its plea offer to the defendant. *The plea offer was for the defendant to serve 36—*
>
> THE COURT: Hang on. I don't want to hear a plea offer that wasn't accepted. The plea offer that the defendant took is set forth in paragraph 9 of the guilty plea on file. And what I'm looking to hear is what the State has to say in support of that plea agreement and why the Court should go along with that plea agreement.
>
> THE PROSECUTOR: Okay. Thank you, Your Honor, for the clarification.
>
> Yes. In support of that plea agreement, the State looked at— at its factors in regards to—this was a theft of a $198 necklace from Walmart. Looked at the State's ability to prove up that case. That's one of the things we looked into—that I looked into, Your Honor, and made the recommendation. Like, this case was amended based on his—it was enhanced based on his past criminal history.
>
> Also I reached out to Walmart in regards to that restitution amount. I have not received a return phone call back. The phone just—calls went unanswered. So based on what happened in Scott County and how they resolved that case and had much higher cases than our case, Your Honor, the State recommended the recommendation that it gave.

(Emphasis added.) After Shelton's allocution, the district court told him that it would not be following the sentencing agreement "but at the same time I haven't ignored the fact that you have a plea bargain." In the end, the court took into account Shelton's extensive criminal history and determined he should be incarcerated.

"A plea agreement is akin to a contract." *State v. Powell*, No. 17-0882, 2018 WL 3912110, at *3 (Iowa Ct. App. Aug. 15, 2018) (collecting cases). In all plea agreements, the accused party is required to "waive fundamental rights," and, in

return, we "hold prosecutors and courts to the most meticulous standards of both promise and performance." *State v. Bearse*, 748 N.W.2d 211, 215 (Iowa 2008) (citation omitted). When a plea agreement obliges the State to make a recommendation, the State must abide by both the explicit terms and spirit of the plea agreement. *See Patten*, 981 N.W.2d at 132 ("[W]e require 'strict compliance' with both the letter and spirit of plea agreements . . . ." (citation omitted)); *State v. Lopez*, 872 N.W.2d 159, 180 (Iowa 2015) ("Iowans are entitled to expect the state will honor its plea agreements and sentencing recommendations that induce guilty pleas."). To "recommend" a sentence means:

> (1) to mention or introduce as being worthy of acceptance, use, or trial, (2) to make a commendatory statement about as being fit or worthy, (3) to bring forward as being fit or worthy, (4) present with approval, (5) indicate as being one's choice for something or as otherwise having one's approval or support, (6) offer or suggest as favored by oneself.

*Davis*, 971 N.W.2d at 557 (cleaned up). With these standards in mind, Shelton contends that the State gave an implicit reservation about the agreed-upon sentence at the resumed sentencing hearing, thus depriving him of the benefit of the bargain and breaching the plea agreement. *See State v. Boldon*, 954 N.W.2d 62, 71–72 (Iowa 2021) (recognizing that a prosecutor's "expression of a material reservation regarding the plea agreement" constitute a breach of the plea agreement, whether the reservation is "explicit or implicit").

But, at both the first sentencing hearing and at the continued hearing, the State supported the terms of the plea agreement and did not express material reservations or express regret about the plea agreement when asked to provide input. While the State started to comment on plea negotiations, the district court

stopped the discussion and directed the State to the memorialized plea agreement. The State agrees that the sentencing court can cut off the reference to plea negotiations. *See State v. Staton*, 13 N.W.3d 795, 799 (Iowa 2024) ("We reiterate that district courts in determining the appropriate sentence may consider a defendant's remorse or lack of remorse, but not his rejection of plea offers."), *as amended* (Feb. 7, 2025).

When reviewing the record to determine if a breach occurred, we look to whether the prosecutor "acted contrary to the common purpose of the plea agreement and the justified expectations of the defendant and thereby effectively deprived the defendant of the benefit of the bargain." *State v. Frencher*, 873 N.W.2d 281, 284 (Iowa Ct. App. 2015). In his appellate brief, Shelton supports his challenge with cases that discuss the prosecutor's failure to follow the written plea agreement that expressly mandated a certain recommendation by the State. But this situation tracks more closely with *State v. Boldon,* where the supreme court determined that the defendant failed to establish a breach of the plea agreement where the terms never prohibited the action complained of—attempting to argue for the imposition of court costs. 954 N.W.2d at 71–72 (noting the prosecutor never recommended a sentence not expressed in the plea agreement and the silence in the agreement as to court costs did not prohibit the prosecutor from recommending those costs be assessed).

In the first sentencing hearing, the prosecutor said the suspended prison sentence was appropriate and asked the court to follow "that agreement." At the continued hearing, the court asked the State what it "ha[d] to say in support of that plea agreement and why the Court should go along with that plea agreement." The

State responded by explaining the reasons for the agreement's terms. It pointed out the value of the stolen item, "the State's ability to prove up" the case, the plea to the upgraded charge based on the "past criminal history," and the lack of interest and response from Walmart related to restitution. While the State pointed to "what happened in Scott County and how they resolved that case," we take that to mean that those "much higher cases" warranted a more severe sanction than what the State recommended here. Thus, we do not find the second prosecutor's recommendation deviated from "the letter and spirit" of the plea agreement. *Patten*, 981 N.W.2d at 132. Nor do we find the prosecutor's statements to the sentencing court to be "lackluster," as Shelton suggests. *See United States v. Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007) (finding prosecutors "need not present promised recommendations to the court with any particular degree of enthusiasm"). Shelton failed to establish a breach of the plea agreement.

**IV. Conclusion.**

Having found the State did not breach the plea agreement, we affirm the sentence as imposed.

**AFFIRMED.**